**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **SANDY SELF,** | 1:17-cv-01107-LJO-SKO |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER RE MOTIONS *IN LIMINE*** |
| v. | **(ECF Nos. 27, 28, 29, 30, 31, 32, 33)** |
| **FCA US LLC, a Delaware Limited Liability Company; and DOES 1 through 10, inclusive,** | **Jury Trial: January 23, 2019** |
| **Defendants.** | |

Parties should note that the Court has two criminal jury trials also scheduled for January 23, 2019. Criminal cases have priority over civil cases constitutionally. Parties are ordered to meet and confer on the issue of Magistrate Judge consent, leaving intact the jury component. Parties are required to advise the Court of their decision within three (3) weeks from the date of this memorandum.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Sandy Self ("Plaintiff") brings this suit against FCA US LLC ("FCA," "Chrysler," or "Defendant") for claims under the Song-Beverly Consumer Warranty Act ("Song-Beverly Act") and for fraudulent concealment. On May 31, 2011, Plaintiff purchased a new 2011 Jeep Liberty. Plaintiff contends that the subject vehicle has a defect in the Totally Integrated Power Module ("TIPM"), a defect of which FCA was aware prior to her purchase of the vehicle and which FCA fraudulently concealed. Plaintiff contends that the defects and nonconformities to the warranty caused repeated problems with the engine and electrical system and that that despite a repeated number of repair attempts, FCA has been unable to conform the vehicle to its warranty. Plaintiff filed suit on July 13, 2017, in Fresno

County Superior Court, and the case was removed to this court on August 16, 2017. ECF No. 1.

This matter is set for a jury trial on January 23, 2019. Before the Court are the parties' motions *in limine*, three brought by FCA and four brought by Plaintiff.

The Court finds the matters suitable for decision on the papers and considers them under submission pursuant to Local Rule 230(g).

## II. **STANDARD OF DECISION**

A party may use a motion *in limine* to exclude inadmissible or prejudicial evidence before it is actually introduced at trial. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). "[A] motion *in limine* is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child and Family Services*, 115 F.3d 436,440 (7th Cir. 1997). A motion *in limine* allows the parties to resolve evidentiary disputes before trial and avoids potentially prejudicial evidence being presented in front of the jury, thereby relieving the trial judge from the formidable task of neutralizing the taint of prejudicial evidence. *Brodit v. Cambra*, 350 F.3d 985, 1004-05 (9th Cir. 2003).

Motions *in limine* that exclude broad categories of evidence are disfavored and such issues are better dealt with during trial as the admissibility of evidence arises. *See, e.g., Brown v. Kavanaugh*, No. 1:08-cv-01764-LJO, 2013 WL 1124301, at *2 (E.D. Cal. Mar.18, 2013) (citing *Sperberg v. Goodyear Tire & Rubber, Co.*, 519 F.2d 708, 712 (6th Cir. 1975)); *see also In re Homestore.com, Inc.*, No. CV 01–11115 RSWL CWX, 2011 WL 291176, at *2 (C.D. Cal. Jan.25, 2011) (holding that motions *in limine* should "rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial"); *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2012 WL 1189898, at *4 (N.D. Cal. Jan. 4, 2012) (concluding that "a broad categorical exclusion" was unwarranted).

Additionally, some evidentiary issues are not accurately and efficiently evaluated by the trial judge in a motion *in limine*, and it is necessary to defer ruling until during trial when the trial judge can

better estimate the impact of the evidence on the jury. *See, e.g., United States v. Amaro*, 613 Fed. App'x. 600, 602 (9th Cir. 2015), *cert. denied sub nom. Stewart-Hanson v. United States*, 136 S. Ct. 276 (2015); *see also Jonasson*, 115 F.3d at 440.

## III. <u>DISCUSSION</u>

**A.** **<u>FCA's Motion *in Limine* #1</u>**

FCA moves to exclude the portion of Dr. Barbara Luna's expert testimony that relates to fraudulent inducement for allegedly failing to meet the reliability and fitness requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny.

**1.** **<u>Expert Testimony</u>**

Federal Rule of Evidence ("Rule") 702 governs the admissibility of expert testimony. Under Rule 702, a proposed expert witness must first qualify as an expert by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The proposed expert witness may then testify in the form of an opinion if: "(a) the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." *Id.*

The trial court serves a special "gatekeeping" function with respect to Rule 702. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). The trial court must make an initial assessment of the proposed expert testimony to ensure that it "rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. In other words, the trial court must consider (1) whether the reasoning or methodology underlying the expert testimony is valid (the reliability prong); and (2) whether the reasoning or methodology can be applied to the facts in issue (the relevancy prong). *See id.* at 592-93.

To determine the reliability of expert testimony, the Supreme Court has identified four factors

that a trial court may consider: "(1) whether the 'scientific knowledge . . . can be (and has been) tested'; (2) whether 'the theory or technique has been subjected to peer review and publication'; (3) 'the known or potential rate of error'; and (4) 'general acceptance.'" *Obrey v. Johnson*, 400 F.3d 691, 696 (9th Cir. 2005) (quoting *Daubert*, 509 U.S. at 593-94). These factors, however, are not exclusive. *See Kumho Tire*, 526 U.S. at 150 ("*Daubert* makes clear that the factors it mentions do *not* constitute a definitive checklist or test." (emphasis in the original) (citation and internal quotation marks omitted)). Rather, the trial court enjoys "broad latitude" in deciding how to determine the reliability of proposed expert testimony. *Id.* at 141-42. As to relevancy, the Supreme Court has explained that expert testimony is relevant if it assists the trier of fact in understanding evidence or determining a fact in issue in the case. *Daubert,* 509 U.S. at 591.

The proponent of the expert testimony carries the burden of proving its admissibility. Fed. R. Evid. 702 advisory committee's note to 2000 amendment; *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

**2.    Discussion**

Plaintiff's expert Dr. Luna is a forensic accountant and damages and valuation expert. She authored a 28-page expert report in this case (which was not attached to the motion) that includes an expert opinion concerning FCA's alleged fraudulent concealment of a known defect in the TIPM in Plaintiff's Jeep Liberty. Though the motion was filed before FCA deposed Dr. Luna in this case, based on deposition testimony she has given in similar cases, FCA argues that Dr. Luna's opinions concerning FCA's prior knowledge of a defect are "based entirely on allegations contained in Plaintiff's Complaint" and on a series of emails between automotive engineers, provided to her by counsel, discussing TIPM-related issues in other vehicles. ECF No. 27 at 2. FCA argues that Dr. Luna did no independent investigation of the facts alleged in the Complaint, lacks understanding about the engineering issues discussed in the documents on which she bases her opinion, needs to rely on an engineering expert's testimony to establish whether the documents were related to the TIPM in Plaintiff's vehicle, lacks

4

knowledge of the underlying issues, and has no basis to offer expert opinions related to the TIPM. She has in recent depositions provided a timeline of FCA's knowledge about TIPM-related problems. FCA argues that she admits that she does not know which TIPM units are in the early vehicles on her timeline and whether they are related to the TIPM-7 at issue in this case. She also admits that she relies on the testimony of the engineering expert to establish which documents relate to Plaintiff's vehicle. *Id*. at 4.

FCA argues, in short, that Dr. Luna lacks expertise in automotive engineering and therefore lacks any foundation for her opinions relating to the TIPM, especially because different models of the TIPM were installed in different vehicles. Without knowledge about whether the component parts are the same, she could not testify that an issue in the TIPM in a vehicle manufactured in 2007 is at all related to a vehicle manufactured in 2011. FCA seeks to exclude Dr. Luna's opinions, testimony, and written report, "especially as to the ultimate issue of fraudulent inducement" and requests that the Court instruct Dr. Luna not to offer any testimony without laying the proper foundation.

Plaintiff responds that Dr. Luna's testimony rests not on engineering issues such as whether a problem constitutes a defect or a safety problem but instead she is expected to testify that "based on her review of thousands of pages of Chrysler's corporate records, the management and director at Chrysler had actual notice of information that relates to reported problems that were attributed by Chrysler's own personnel to the TIPM-7, and that Chrysler concealed those facts from Plaintiff and other customers alike." ECF No. 46 at 4. Plaintiff states that she will not ask any of her experts to opine whether Chrysler had an intent to defraud but will ask them to opine whether Chrysler's internal documents demonstrate knowledge of the TIPM defects and whether failure to disclose the defects complied with "applicable regulations and [Chrysler's] own code of conduct." *Id*. at 3-4.

Plaintiff argues that Dr. Luna has a reliable basis in the knowledge and experience of the relevant discipline because she has "thirteen certifications and accreditations regarding her analysis of business dealings, including [a] license as a Certified Fraud Examiner" and has "over 30 years of experience as a forensic accountant as well as experience analyzing damages and valuation of corporate business

5

dealings." ECF No. 46 at 7. Plaintiff cites *Milton H. Greene Archives, Inc. v. BPI Commc'ns, Inc.*, where the court overruled an objection to expert testimony based on lack of personal knowledge, because "'[e]xperts may base their testimony upon information not within their personal knowledge or observation,'" and further stated that "[a] court may admit expert testimony of business customs and practices where it will aid the trier of fact in understanding the business in which the claims at issue arose." 378 F. Supp. 2d 1189, 1198 n.9 (C.D. Cal. 2005) (quoting *United States v. Dailide*, 227 F.3d 385, 392 (6th Cir. 2000)), Plaintiff argues that Dr. Luna's testimony falls outside the ordinary knowledge of the jury and that her expertise concerning business practices and whether Chrysler acted in compliance with its "various disclosure obligations and its own code of conduct" will be helpful to the jury. ECF No. 46 at 7.

The Court agrees that Dr. Luna's lack of firsthand automotive engineering knowledge does not render all of her testimony inadmissible. She stated that she would rely on other experts for the technical meaning of the internal documents on which she relies. "[E]xpert opinions may find a basis in part 'on what a different expert believes on the basis of expert knowledge not possessed by the first expert,'" and this is in fact "common in technical fields." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 978 F. Supp. 2d 1053, 1066 (C.D. Cal. 2013) (quoting *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002)). An expert may not merely act as a conduit for another expert's testimony or simply vouch for another expert, but relying on another expert's opinion in formulating her own opinion does not on its own run afoul of Rule 702. Nor does the fact that Dr. Luna was provided internal FCA documents from counsel or that she read about certain allegations in the Complaint render her testimony unreliable. Rule 703 provides that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703; *see, e.g., In re Bard IVC Filters Prod. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2017 WL 6554163, at *2 (D. Ariz. Dec. 22, 2017) ("Those documents are factual evidence in this case, and experts clearly are permitted to take factual evidence into account.").

6

Dr. Luna may offer no opinion about whether the TIPM-7 was defective, nor any opinion on whether or not Chrysler had an intent to defraud. The Court cannot presently determine whether there exists any foundation that would allow Dr. Luna to testify about "applicable regulations" and/or Chrysler's "code of conduct" as they may relate to disclosure of any defects in this case.

FCA is free to raise the issues outlined in its motion during cross-examination at trial, but the Court will not preclude Dr. Luna's opinion testimony on these issues, at this time, on the ground that it is unreliable. However, the proper foundation must be laid for such testimony to be admissible. Accordingly, the motion is **DENIED WITHOUT PREJUDICE**.

**B.** **FCA's Motion *in Limine* #2**

In its second motion *in limine*, FCA moves to exclude "negative and unduly prejudicial press coverage at trial." ECF No. 28. The motion has been withdrawn as part of a stipulation with Plaintiff. ECF No. 40. Pursuant to the stipulation, Plaintiff will not address (1) general media coverage of the automotive industry; (2) FCA US LLC's unrelated vehicular deaths (such as the death of Anton Yelchin); (3) FCA US LLC's bailout by the federal government; and (4) FCA US LLC's and its predecessor's bankruptcy filings. The parties agreed that Plaintiff will be permitted to speak about: (1) consumer complaints relating to this vehicle and related vehicles; (2) NHTSA complaints and investigations; and (3) media coverage relating specifically to Plaintiff's make and model vehicle and NHTSA investigations of the TIPM system. Defendant reserved the right to assert applicable objections to Plaintiff's counsel's attempts to bring these matters into evidence

In light of the stipulation, the motion is **DENIED AS MOOT**.

**C.** **FCA's Motion *in Limine* #3**

In its third motion *in limine*, FCA moves to exclude Plaintiff's prayer for both civil penalty and punitive damages. ECF No. 29. This motion has also been withdrawn, with the understanding between counsel that it could be addressed in a post-verdict motion. ECF No. 40.

Accordingly, the motion is **DENIED AS MOOT**.

7

**D.     Plaintiff's Motion *in Limine* #1**

In Plaintiff's first motion *in limine*, she seeks to preclude FCA from offering testimony or argument that because FCA repaired a particular component of the vehicle, it brought the entire vehicle in conformance with the warranty. ECF No. 30. The Song-Beverly Act provides in pertinent part that:

> (1) Except as provided in paragraph (2), if the manufacturer or its representative in this state does not service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either replace the goods or reimburse the buyer in an amount equal to the purchase price paid by the buyer, less that amount directly attributable to use by the buyer prior to the discovery of the nonconformity.
>
> (2) If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle, as that term is defined in paragraph (2) of subdivision (e) of Section 1793.22, to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle in accordance with subparagraph (A) or promptly make restitution to the buyer in accordance with subparagraph (B). However, the buyer shall be free to elect restitution in lieu of replacement, and in no event shall the buyer be required by the manufacturer to accept a replacement vehicle.

Cal. Civ. Code § 1793.2(d). A "nonconformity" is defined, circularly, as "a nonconformity which substantially impairs the use, value, or safety of the new motor vehicle to the buyer or lessee." Cal. Civ. Code § 1793.22(e)(1). Plaintiff points to a Court of Appeal decision in which the court stated that the definition of a nonconformity "is generally synonymous with what the average person would understand to be a defect." *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App. 4th 785, 801 n.11 (2006). In that case, the court held that despite the lack of a clear statutory definition, in light of the remedial purpose of the statute, "we see no reason that a 'nonconformity' may not include an entire complex of related conditions (e.g., cracked pipe *and* water damage)." *Id.* (emphasis in original). The court found adequate evidence to support the jury's apparent conclusion as the finder of fact (about both the existence and nature of the alleged nonconformity) that "the mere repair of the leak in October of 2003 did not cure the entirety of the nonconformity, since the resulting water damage still remained." *Id.* at 801.

Plaintiff also cites case law for the proposition that in order to establish a breach of express

warranty, a plaintiff must have presented the vehicle two or more times for repair but that "the only affirmative step the Act imposes on consumers is to 'permit the manufacturer a reasonable *opportunity* to repair the vehicle." *Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1103 (2001) (emphasis in original) (quoting *Krotin v. Porsche Cars N. Am., Inc.*, 38 Cal. App. 4th 294, 303 (1995), *as modified on denial of reh'g* (Sept. 14, 1995)). The Court of Appeal in *Oregel* held that a plaintiff satisfied the presentation element where he brought a car in for repair six times, even though there was only one attempt to repair the leak and the rest of the visits consisted only of looking for the source of the leak. *Id*. at 1103-04.

Plaintiff argues that there is no requirement that the same nonconformity be at issue during each repair attempt, citing the CACI instruction and policy issues. She states that Plaintiff presented the subject vehicle for repair on multiple occasions with problems that mostly involved the engine's electrical and fuel systems. She expects FCA to argue that it "satisfied its duty to conform the vehicle to warranty within a reasonable number of repair attempts simply because it repaired a particular, distinct component within a reasonable number of repair attempts." ECF No. 30 at 6. She seeks to prevent the argument that FCA "fulfilled its requirement if the *same exact* component did not fail twice." *Id*. Any argument that repairs must be isolated to a particular component or system of the vehicle, she argues, is irrelevant and unduly prejudicial because it risks confusing the jury and wasting time on technical issues.

FCA opposes the motion. ECF No. 44. First, it argues that Plaintiff's motion is not directed at specific evidence it seeks to exclude. Next, it argues that Plaintiff seeks to exclude evidence relevant to the case. Plaintiff bears the burden of demonstrating failure to conform the vehicle to the applicable express warranties within a reasonable number of attempts. FCA argues that Plaintiff through this motion seeks to lower her standard of proof by attempting to argue that any two repairs to the vehicle constitute evidence of a violation of the Song-Beverly Act.

FCA points to the Tanner Consumer Protection Act, "which follows directly after the Song-

Beverly Act" to give guidance to the definition of "a reasonable number of attempts." ECF No. 44 at 3. That act sets out a presumption that "a reasonable number of attempts" to repair the "same nonconformity" is two or more attempts within an 18-month period from the time of purchase or 18,000 miles if the vehicle's condition poses a risk of serious injury or death or, alternatively, four or more attempts within an 18-month period from the time of purchase or 18,000 miles. Cal. Civ. Code § 1793.22(b)(1)-(2). Where there are multiple nonconformities, the Tanner Act provides that a reasonable number of attempts is presumed where "[t]he vehicle is out of service by reason of repair of nonconformities by the manufacturer or its agents for a cumulative total of more than 30 calendar days since delivery of the vehicle to the buyer." Cal. Civ. Code § 1793.22(b)(3).

FCA argues that it must be able to defend itself by showing that "single, successful repair attempts for isolated mechanical issues do not trigger any obligation" under the Song-Beverly Act and intends to do so by showing that "some of the alleged problems with the vehicle were repaired on the first try and did not reoccur." ECF No. 44 at 4. The only way FCA can rebut the allegations against it, it contends, is to prove that it did repair the problems with Plaintiff's vehicle within a reasonable number of attempts. *Id.*

"Issues of the existence and nature of an alleged nonconformity are questions of fact for the jury." *Robertson*, 144 Cal. App. 4th at 801 n.12. So too is what qualifies as a reasonable number of attempts. *See, e.g.,* CACI 3202 ("'Repair Opportunities' Explained"). Plaintiff's arguments and FCA's arguments are ones for the jury, not for this Court on a motion *in limine*.

Plaintiff's motion is **DENIED**.

E.  **Plaintiff's Motion *in Limine* # 2**

Plaintiff's second motion *in limine* seeks to exclude argument or testimony that Plaintiff did not make sufficient efforts to ask FCA to repurchase or replace the subject vehicle. ECF No. 31. She contends that defendants in lemon law cases frequently argue that the plaintiff failed to issue a formal request for repurchase of the vehicle. Because California law has no such requirement, Plaintiff submits

that any argument or evidence suggesting as much is irrelevant or misleading.

Plaintiff argues that FCA's refusal to repurchase or replace the defective vehicle is relevant to her prayer for civil penalties. Song-Beverly provides for civil penalties where a plaintiff establishes that a defendant's failure to comply with an obligation of that statute was willful. Cal. Civ. Code § 1794(c). A jury can find that a violation was willful where a manufacturer "refused a refund or replacement on the ground a reasonable number of repair attempts had not been made, without making any effort to gather the available information on repair history. . . . " *Kwan v. Mercedes-Benz of N. Am., Inc.*, 23 Cal. App. 4th 174, 185 (1994). Plaintiff intends to argue that after Plaintiff sent a request to FCA seeking repurchase of the vehicle (an act she was not legally required to undertake), FCA failed to act until suit was filed, and that this qualifies as willful conduct subject to civil penalties.

Plaintiff also seeks to preclude FCA from examining Plaintiff about why she "did not do more to obtain a buy-back prior to filing a lawsuit" on the ground that any such testimony is irrelevant. Plaintiff argues that California Courts of Appeal have made clear that Song-Beverly places the burden on the manufacturer to monitor warranty repair attempts and "does not require consumers to take any affirmative steps to secure relief for the failure of a manufacturer to service or repair a vehicle to conform to applicable warranties-other than, of course, permitting the manufacturer a reasonable opportunity to repair the vehicle," even though, "as a practical matter," most consumers likely will make such a request. *Krotin*, 38 Cal. App. 4th at 302-03; *see also id*. at 303 ("As it stands now, however, the manufacturer has an affirmative duty to replace a vehicle or make restitution to the buyer if the manufacturer is unable to repair the new vehicle after a reasonable number of repair attempts, and the buyer need not reject or revoke acceptance of the vehicle at any time. The buyer need only provide the manufacturer with a reasonable opportunity to fix the vehicle."); *Lukather v. Gen. Motors, LLC*, 181 Cal. App. 4th 1041, 1050 (2010) (citing *Krotin* and rejecting the defendant's contention that plaintiff "himself had a duty to act promptly under the Act").

Plaintiff also seeks to prevent FCA "from trying to portray Plaintiff as [a] litigious or greedy

11

person" or "from claiming that Plaintiff did not exhaust all of her options prior to filing a lawsuit" because any such claim is irrelevant because the burden rests with FCA to offer to repurchase or replace the vehicle. ECF No. 31 at 6. Plaintiff also argues that this evidence or argument should be excluded as unduly prejudicial under Federal Rule of Evidence 403 because it risks tainting Plaintiff in the eyes of the jury without providing any probative information about the claims in this case.

FCA opposes, arguing that while Plaintiff may believe that she did what was necessary prior to filing suit, "this is a question of fact for the jury based on evidence presented and the closing argument about how the law bears on that evidence. It is not a matter for a motion *in limine*." ECF No. 45.

The Court agrees. The motion is **DENIED**.

F.  **Plaintiff's Motion *in Limine* #3**

Plaintiff's third motion *in limine* seeks to exclude reference to previous settlement negotiations between the parties under Federal Rule of Evidence 408. ECF No. 32. In particular, Plaintiff seeks to exclude a letter dated April 1, 2016, from Chrysler's Customer Relations Manager to Plaintiff offering to repurchase or replace the subject vehicle.[1] Plaintiff contends that the parties had a live dispute beginning on March 24, 2013, when she contacted Chrysler and requested a buyback of the subject vehicle. On April 4, 2013, FCA's agent informed Plaintiff that it was offering to "repurchase or replace" the subject vehicle but did not include "the amount to be tendered" or information about "the logistics of the repurchase." ECF No. 32 at 4. The April 1, 2016, letter again offered to repurchase or replace the subject vehicle, though it again did not include the amount to be tendered or information about the logistics of repurchase. Plaintiff characterizes this letter as "little more than the starting point of a negotiation to settle the claim." *Id*. She argues that because there was a live dispute between the parties, the letter was part of a settlement negotiation offer properly excluded under Federal Rule of

---

[1] The motion references this as a letter dated March 1, 2016, though the letter is dated "04/01/2016." ECF No. 32-3.

12

Evidence 408. Though FCA had offered to repurchase the vehicle, the parties had not settled on the value of the claim, leaving that a matter in dispute and the subject of further negotiation between the parties.

Plaintiff argues that an offer to "repurchase or replace" the vehicle must either be an admission that the vehicle qualifies under the Song-Beverly Act or be an offer to negotiate the claim rather than submit to the statutory requirements. Plaintiff also argues that courts consider the parties' intent when determining whether a statement constitutes an offer to compromise, which weighs in favor of a finding that this was part of a compromise. After failing to repurchase or replace the vehicle in March of 2013, FCA faced liability for repurchase as well as potential civil penalties under the Song-Beverly Act. Plaintiff argues that the letter sent in April of 2016 offered only to repurchase or replace the vehicle, without mentioning the potential civil liability, a fact that Plaintiff views as indicating that the letter was an offer to compromise and thus qualifies as a settlement negotiation.

Though FCA did not file a written opposition to the motion, it is included as one of the motions that continues to be in dispute following a court-mandated meet-and-confer session between counsel. *See* ECF No. 40.

Under Federal Rule of Evidence 408, compromise or negotiation evidence "is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408. Federal Rule of Evidence 408 contains an exception permitting admission of evidence of compromise offers or negotiation "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408. Plaintiff argues that FCA has suggested that it intends to submit the letter as evidence to negate a contention of undue delay, which Plaintiff views as an inapplicable exception to Rule 408. The undue delay at issue appears to be Plaintiff's contention that FCA failed to repurchase the vehicle in a timely manner, consistent with the requirements of the Song-Beverly Act, and FCA intends to show through the letter

13

that it did not in fact delay. Plaintiff contends that the exception for evidence that negates a contention of undue delay is limited to circumstances where a defendant raises laches as a defense or attempts to cast doubt on the merits of a claim based on the passage of time between injury and suit, not in a situation such as this where a defendant is using the evidence to rebut a contention that it engaged in delay. Courts have not read 408's exception so narrowly. In *Freidus v. First Nat. Bank of Council Bluffs*, for instance, the Eighth Circuit found no abuse of discretion in the admission of two letters exchanged during settlement negotiations that outlined a bank's requirements before it would give consent to a sale, after the plaintiff had testified that "the bank had failed to give any reasons for the conditions it had imposed on giving its consent, testimony that left unrebutted would have been devastating to the bank's position that it had not unduly delayed giving its consent." 928 F.2d 793, 795 (8th Cir. 1991).

Rule 408 prohibits evidence of settlement negotiations to prove validity or amount of a disputed claim but states that such evidence can come in for "another purpose" and gives a non-exhaustive list of examples of some permissible other purposes. Plaintiff has made clear that it intends to argue that "Defendant did *nothing* to actually effect a repurchase of the vehicle, until this suit was filed." ECF No. 31 at 2. FCA appears to view the April 1, 2016, letter as evidence that undermines Plaintiff's argument that it failed entirely to act. Whether FCA acted and whether any such action was adequate to avoid a finding of willfulness are jury issues relevant to the claims in this case. The Court is not persuaded that the letter falls under the scope of Rule 408. But even if it did, while the letter could not be used to show validity or lack of validity of a claim, it may be used for another purpose – such as rebutting Plaintiff's argument that FCA had acted willfully in violation of the Song-Beverly Act by utterly failing to effect a repurchase of the vehicle.

Accordingly, the motion is **DENIED**.

**G.      Plaintiff's Motion *in Limine* #4**

Plaintiff's fourth motion *in limine* seeks to exclude evidence or testimony concerning attorney

advertisements. ECF No. 33. Plaintiff has withdrawn this motion on the condition that "Defendant refrain from speaking about any advertising issued by Plaintiff's counsel regarding its services as they relate to potential claims brought under, or relating to, the Song-Beverly Consumer Warranty Act." ECF No. 40. The parties agreed that they may, during voir dire, inquire into whether potential jurors have received, or otherwise been exposed to, such forms of advertising. *Id*.

In light of the parties' stipulation, the motion is **DENIED AS MOOT**.

### IV. <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, the parties' motions *in limine* are **DENIED**.

IT IS SO ORDERED.

Dated: __**November 15, 2018**__          _____/s/ Lawrence J. O'Neill_____
                                            UNITED STATES CHIEF DISTRICT JUDGE