Scott S. Shepardson, State Bar No. 197446
sshepardson@ongaropc.com
**ONGARO PC**
50 California Street, Suite 3325
San Francisco, CA 94111
Telephone: (415) 433-3900
Fax: (415) 433-3950

Lisa Schwartz Tudzin, State Bar No. 132173
ltudzin@ongaropc.com
**ONGARO PC**
333 S. Hope Street, 40th Floor
Los Angeles, CA 90017
Telephone: (415) 433-3900
Fax: (415) 433-3950

Attorneys for Defendant
FCA US LLC

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDY SELF,<br><br>    Plaintiff,<br><br>vs.<br><br>FCA US LLC, a Delaware limited liability company, and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No.: 1:17-CV-01107-SKO<br><br>*Assigned for all Purposes to the Honorable Sheila K. Oberto*<br><br>**DEFENDANT FCA US LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES**<br><br>Date: April 17, 2019<br>Time: 9:30 a.m.<br>Courtroom: 7 |

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 4

II. COUNSEL'S FEES ARE UNREASONABLE AND UNSUPPORTED BY THE FACTS OR EVIDENCE SUBMITTED BY PLAINTIFF ..................... 7

    A. There Was Nothing Unusual or Complicated About This Case That Would Warrant an Award $220,456.10 in Fees and Costs if a Multiplier Was Granted ........................................................................... 8

        1. The Total Number of Hours Billed is Unreasonable ............................ 9

        2. The Hourly Rates Sought in This Matter are Unreasonable ..................

    B. An Award of Fees Totaling $132,486.25 Based on Hourly Rates as High as $825 per Hour if a Multiplier is Granted, is Entirely Unreasonable ........................................................................................ 14

    C. There Was No Novelty to this Case and the Claims Were Not Difficult .............................................................................................. 15

    D. No Special Skill Was Required to Handle This Case ......................... 16

    E. There is No Evidence That This Was a Purely Contingent Case ....... 17

    F. Plaintiff's Fee Claim Is Excessive and No Multiplier Is Warranted .. 18

III. CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Blum v. Stenson*, 465 U.S. 886, 895, n. 11 (1984) .................................................................. 14

*Jones v. Metropolitan Life Ins. Co.*, 845 F.Supp.2d 1016, 1027 ............................................ 11

*Missouri v. Jenkins*, 491 U.S. 274, 288, n. 10 (1989) ............................................................. 11

*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1096 ................................................. 14

**California Cases**

*Donahue v. Donahue* (2010)
  184 Cal.App.4th 259 ........................................................................................................ 8, 18

*Doppes v. Bentley Motors, Inc.* (2009)
  174 Cal.App.4th 967 ....................................................................................................... 14, 18

*Goglin v. BMW of North America, LLC, et al.* (2016)
  4 Cal.App.5th 462 ..................................................................................................... 14, 15, 18

*Graciano v. Robinson Ford Sales, Inc.* (2006)
  144 Cal.App.4th 140 ........................................................................................................ 8, 14

*Holguin v. DISH Network, LLC* (2014)
  229 Cal.App.4th 1310 ........................................................................................................ 7, 19

*Ketchum v. Moses* (2001)
  24 Cal.4th 1122 .................................................................................................................. 7, 19

*Levy v. Toyota Motor Sales, USA, Inc.* (1992)
  4 Cal.App.4th 807 .................................................................................................................. 7

*Nightingale v. Hyundai Motor America* (1994)
  31 Cal.App.4th 99 ............................................................................................................. 8, 18

*Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006)
  144 Cal.App.4th 785 ............................................................................................................... 8

**California Statutes**
Cal. Civ. Code
  § 1794(d) ................................................................................................................................ 7

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff Sandy Self ("Plaintiff") seeks $220,456.10 in attorneys' fees, costs, and expenses for a simple lemon law case concerning one vehicle with a purchase price of approximately $39,028.08 where Defendant FCA US LLC ("Defendant") offered to repurchase the vehicle nearly a year before Plaintiff filed her lawsuit. Without the requested 1.5 multiplier for which there is no legitimate or reasonable basis, the fee request still totals $132,486.25 for litigating a straightforward matter through trial.

This is one of hundreds of lemon law cases filed in nearly every county in California against FCA US by these same lawyers who advertise that they are experts in the field and can secure fast and easy results. This matter involved one plaintiff, one defendant, one vehicle, claims for breach of express and implied warranties, and a fraud claim that is identical to that contained in almost every complaint Knight Law Group files in Song-Beverly cases.

It also involved not just one, but three offers from Defendant to resolve the case. Defendant first offered to repurchase the vehicle on April 1, 2016 prior to the Plaintiff filing a lawsuit. Plaintiff ignored that offer. Then, on February 8, 2018, Defendant made on Rule 68 Offer in the sum of $45,000, plus attorney's fees, costs, and expenses. Again, Plaintiff failed to respond with a meaningful counteroffer or other demand. Then, on November 8, 2018, Defendant amended its Rule 68 Offer to settle the matter short of trial for $80,000. Rather than negotiate a resolution, Plaintiff chose to take the case to a jury. *They incurred $90,931.25 in fees after the amended offer to the end of the case in order to recover just $4,666 more by a jury verdict.* In the meantime, Plaintiff opted to drive her vehicle another three years from the time of the first repurchase offer until the jury's verdict rather than resolve the case.

True, at trial the jury awarded Plaintiff $84,666 on February 14, 2019, but it was only $4,666 more than the last Rule 68 Offer made on November 8, 2018. The result was less than stellar in that the jury did not award Plaintiff a full double civil penalty and Plaintiff's fraud and punitive damages claims by which she hoped to recover considerably more never even went to the jury because Plaintiff lacked sufficient evidence to sustain it. Those are important facts because, contrary to the assertion that counsel achieved an amazing result, Plaintiff actually lost the bulk of her claim, having incurred more than $90,000 in fees during a four-month period alone hoping for a better result.

From any perspective, the fee motion contains equal parts of overreaching and inefficiency in 361.25 total hours billed by two firms using 15 lawyers and one paralegal for this simple civil matter. The egregiousness of Plaintiff's fee request is amplified by the generous hourly rates and annual raises in the rates they seek. And, there is no explanation for why it took two firms from Los Angeles to represent a plaintiff in case venued in Fresno, incurring significant fees and costs for travel between the two cities.

There is certainly no reasonable basis for a 1.5 multiplier on top of Plaintiff's inflated lodestar fees. Plaintiff seeks a multiplier because of the "risk" in handling the case and the "delay" in getting paid. But both of those were created entirely by Plaintiff and her counsel. Rather than negotiate a resolution before filing a lawsuit or responding in good faith to one of two Rule 68 Offers before significant fees were incurred to avoid undue delay, Plaintiff's counsel plowed forward with the same strategy they use in every one of the lemon law cases they handle. There was never a great risk of not being paid – both of Defendant's statutory offers included attorney's fees, costs, and expenses. And the statute guaranteed a return on reasonable fees if Plaintiff prevailed. Moreover, there is certainly no evidence that

this case prevented counsel from taking on other work. They have hundreds of cases against Defendant and numerous other manufacturers currently pending.

From the size of the fee request and the number of lawyers who worked on the matter, one would think this lawsuit involved complicated and intricate facts and landscape-changing legal issues. But it didn't. There was standard written discovery, a handful of depositions, a vehicle inspection, and trial preparations that mirror every other case Plaintiff's lawyers handle. It took two law firms and 15 lawyers to manage this garden variety civil dispute.

Plaintiff's counsel claims they are entitled to hefty fees because they know how to litigate these cases effectively and efficiently. But there was nothing particularly effective or efficient about how Plaintiff's counsel handled this case. Quite the contrary, most effective litigators who file a complaint seeking restitution, where an offer to repurchase the vehicle is already on the table would seek to settle the case early so that their client would be relieved of a vehicle she claims is unsafe to drive. Or they would have responded to one of two additional statutory offers in good faith to bring the matter to resolution. Instead, Plaintiff hung on to a fraud claim – a claim she lost by a directed verdict in favor of Defendant. Defendant should not now be taxed with the full effect of Plaintiff's expensive gamble.

While Plaintiff is entitled to recover attorney's fees, costs, and expenses in a Song-Beverly case as the prevailing party, the statute is clear that she is only entitled to recover the amount "***determined by the court*** to have been ***reasonably incurred***." The statute does not authorize a blank check. Plaintiff's request for $198,729.38 in fees if a multiplier is awarded should be denied as unreasonably incurred and the Court should exercise its discretion to reduce the attorney's fees to a reasonable amount. The Court may be guided by a ruling in the Eastern District in a case between these same lawyers involving an almost identical claim, *Dennis Hall, et al. v. FCA US LLC*, Case No. 1:16-cv-00684-DAD-JLT, United States District Court,

Eastern District ("the *Hall* case). Exhibit A to the Declaration of Lisa Schwartz Tudzin in support of Defendant's Opposition to Plaintiff's Motion for Attorney's Fees ("Tudzin Decl.").

Defendant respectfully proposes that any fee award to Plaintiffs should be reduced at a minimum by: (a) a reduction in hourly rates across the board to reflect rates more reasonable in the community where the case was pending based on a ruling already made by the Eastern District in a case between these same lawyers, (b) a reduction in fees incurred for duplicative billing, travel, unnecessary "review," purely clerical tasks, and unsupported or anticipated time, and (c) a minimum of 20% of the remaining fees of Hackler, Daghighian, Martino & Novak ("HDMN") for excessive billing inherent in that firm's practice of billing in quarter hour increments. Plaintiff's costs should be reduced as well.

## II. <u>COUNSEL'S FEES ARE UNREASONABLE AND UNSUPPORTED BY THE FACTS OR EVIDENCE SUBMITTED BY PLAINTIFF.</u>

Plaintiff is only entitled to those fees "determined by the Court to have been ***reasonably incurred.***" (Cal. Civ. Code §1794(d); emphasis added.) This Court has broad authority to determine the amount of a reasonable fee. (*Holguin v. DISH Network, LLC*, (2014) 229 Cal.App.4th 1310, 1329.) The party seeking fees must provide time records documenting the tasks completed and the time spent. (*Hensley v. Eckerhart*, 471 U.S. 424 (1983).) The Court must carefully review the documentation presented and determine whether the time spent was reasonable. (*Ketchum v. Moses*, (2001) 24 Cal.4th 1122, 1132.) It must make an independent determination of what is a reasonable value and amount of fees to litigate a claim of this nature. The person seeking an award of attorneys' fees "is not necessarily entitled to the compensation of the value of attorney services according to [his] own notion or to the full extent claimed by [him]." (*Levy v. Toyota Motor Sales, USA, Inc.*, (1992) 4 Cal.App.4th 807, 816.)

Conversely, if the "time expended or the monetary charge being made for the time expended are not reasonable under all circumstances, then the court must take this into account and award fees in a lesser amount." (*Nightingale v. Hyundai Motor America*, (1994) 31 Cal.App.4th 99, 104.) "A reduced award might be fully justified by a general observation that an attorney overlitigated a case or submitted a padded bill, or that the party has stated valid objections." (*Donahue v. Donahue*, (2010) 184 Cal.App.4th 259, 271 (emphasis added).) The court must exclude "duplicative or excessive" time from its fee award. *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal. App.4th 140, 161. Demonstrating reasonableness is necessary whether the fee arrangement with plaintiff is hourly or contingent. (*Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 817.) In *Robertson*, a case Plaintiff also cites, the court specifically noted that "[i]n either case [hourly fee cases or contingency fee arrangements], a prevailing party has the burden of showing that the fees were reasonably necessary to the conduct of the litigation and were reasonable in amount." (*Id.*)

### A. There Was Nothing Unusual or Complicated About This Case That Would Warrant an Award of $220,456.10 in Fees and Costs if a Multiplier Was Granted.

This case involved one 2011 Jeep Liberty. Tudzin Decl., ¶ 4. Plaintiff filed her Complaint in state court on July 13, 2017 seeking damages for restitution under the Song-Beverly Act and fraudulent concealment against Defendant. After Defendant answered the Complaint, it removed the case to federal court.

On February 8, 2018, it served Plaintiff with a Rule 68 Offer to Compromise for $45,000 (full repurchase and part of a civil penalty) plus costs, expenses, and attorney's fees. Tudzin Decl., ¶ 5, and Exhibit B. Plaintiff never responded to that offer with a meaningful counteroffer or other demand. *Id.* On November 8, 2018, Defendant served an amended Rule 68 Offer in the amount of $80,000 plus costs, expenses, and attorney's fees. Tudzin Decl., ¶ 6, and Exhibit C. Plaintiff refused

the offer, opting instead to proceed with the double civil penalty and fraud claims.

The case went to trial on February 11, 2019. On the third day of trial, after both sides rested, Defendant made a motion for judgment as a matter of law pursuant to Rule 50(a) as to Plaintiff's fraud cause of action and claim for punitive damages. Tudzin Decl., ¶ 7. Plaintiff did not oppose the motion, only stating for the record that counsel believed the Court's evidentiary rulings was too restrictive and improper. *Id*. The Court granted the motion and directed entry of judgment as a matter of law as to Plaintiff's fraud cause of action and punitive damages claim. *Id*. Thereafter, the jury reached a verdict on the Song Beverly claim and awarded a buyback in the amount of $37,233 plus slightly more than one civil penalty, $47,433 for a total award of $84,666. *Id*.

### 1. The Total Number of Hours Billed is Unreasonable.

There is great irony in Plaintiff's contention that Defendant litigated this case vigorously and extensively through trial requiring Plaintiff to incur more than $130,000 in fees by expert lemon law litigators. Before the case even began, Defendant offered to repurchase the vehicle. Early on in the case, Defendant offered to pay Plaintiffs more than restitution plus reasonable costs, expenses, and attorney's fees. Plaintiffs made no counter-offer. Instead of opting to resolve the case at that time, Plaintiff's lawyers plowed forward, diving into discovery and then trial preparations, utilizing two firms and a total of 15 attorneys who, by their own admission, duplicated much of the work that Plaintiff's counsel use in every other case they handle against Defendant.

Plaintiff's summary of the litigation in her motion sets forth a common set of activities for which no specific expertise was required. By Plaintiff's own admission, most of the work was formulaic yet it cost more than $130,000 and more than 350 hours to perform. The complaint was a standard pleading closely modeled after many, many other Knight Law Group cases, the written discovery requests

were rote, there was a vehicle inspection, a handful of depositions, and trial documents identical to those that Plaintiff's counsel generates in every case. Tudzin Decl., ¶ 8. Just between Defendant's second Rule 68 Offer for $80,000 and the jury verdict, Plaintiff incurred $90,931.25 in fees. Tudzin Decl., ¶ 9. $25,582.50 was spent in travel time by the L.A. lawyers to Fresno without any explanation for why local counsel could not have represented this Plaintiff. Tudzin Decl., ¶ 10.

Certainly, it would be appropriate to exclude the entire invoice from either Knight Law Group ("KLG") totaling $30,332.50, or from Hackler, Daghighian, Martino & Novak ("HDMN") totaling $102,153.75 because Plaintiff fails to offer any explanation based on admissible evidence for why it took two firms who claim to be experts in their field to handle this simple case. There is inherent duplication of effort in a staffing strategy that involves 15 lawyers.

Furthermore, both KLG's and HDMN's invoices evidence numerous instances of inappropriate hours billed by senior lawyers like Mr. Mikhov to review basic notices and pleadings or to draft them, duplicative billing, travel to Fresno, and lawyers and a paralegal billing for purely clerical time that should be excluded from the lodestar calculation, as the Eastern District did in the *Hall* case, citing to *Missouri v. Jenkins*, 491 U.S. 274, 288, n. 10 (1989). (See also *Jones v. Metropolitan Life Ins. Co.*, 845 F.Supp.2d 1016, 1027 discounted time for "filing or retrieving electronic court documents or copying." Defendant offers the following to assist the Court in its lodestar review of the fee request demonstrating that, at a minimum, amounts billed by the attorneys, totaling $34,824.70, noted below should be excluded from recovery:

$1,135 – R. Higgins (KLG) billed $450 per hour to draft notices of depositions and deposition subpoenas and then to amend those same notices two more times. See entries on 1/17/18, 1/18/18, 5/4/18, 5/18/18, and 8/29/18.

$3,250 - S. Mikhov (KLG) billed $550 per hour to review numerous notices, orders, trial documents, and correspondence for which he had no other involvement. He had nothing to do with trial preparations or presentation. See 11/30/17, 12/6/17, 12/8/17, 12/18/17, 1/8/18, 1/17/18, 1/18/18, 5/8/18, 6/18/18 to 6/25/18, 7/12/18, 8/9/18, 8/13/18, 8/15/18 to 8/29/18, 9/25/18, 10/4/18 to 10/29/18, 11/2/18, 11/15/18, 11/28/18, 1/7/19, and 1/10/19 to 2/18/19. (Excluded from this number are Mr. Mikhov's time for reviewing things like settlement offers and communicating with the client.)

$302.50 - D. Devabose (KLG) billed $275 per hour duplicating several tasks that Mr. Mikhov also performed. He drafted the second amended notices of depositions and subpoenas to dealership personnel on 5/14/18 after Mr. Higgins drafted those on 5/4/18. Then he billed a half hour to draft the fourth amended notices on 6/4/18 after Mr. Higgins amended those on 5/18/18. Surely, it did not take either of those lawyers a half hour to change the dates on a handful of notices. The task would more reasonably been performed by an assistant in any event.

$8,917.50 - Travel time billed by several KLG lawyers on 7/27/18, 8/3/18, 10/3/18.

$16,665 - Travel time billed by HDMN lawyers on 6/14/18, 1/28/19, 2/10/19 (two lawyers), 2/13/19, and 2/14/19.

$2,674.75 - L. Martin (HDMN) has several instances of duplicative billing. On 11/14/18, she billed for emailing Russell Higgins and Mitch Rosensweig (.25), meeting with those same lawyers (.5), and a firm meeting regarding status of case and allocation of tasks (.5). Those all appear to be for the same activity and should be excluded in the absence of further explanation. On 2/8/19, Ms. Martin bills twice for emailing KLG regarding Dr. Luna's files, preparing trial examination of Defendant's PMK, reviewing the trial exhibit list, deposition transcripts, CAIR records, trial graphics, opening statement (though she was not involved in the trial

and did not give the opening statement), and preparing trial examination questions for Plaintiff's expert, Mr. Lepper. On 2/10/19, she billed twice for preparing a deposition summary of the same witness.

$1,879.95 - A. Eaton, a lawyer, and A. Plata, a paralegal (HDMN), each billed for purely clerical tasks that should be excluded from the lodestar. See 10/8/17, 10/13/17, 6/4/18, 6/14/18, 7/30/18, 8/9/18, 8/13/18, and 8/24/18.

After making the above deductions from HDMN's invoice in the amount of $21,219.70, it would be appropriate to reduce HDMN's fees by at least 20% because it billed in quarter hour increments and Plaintiff has not offered any evidence that such a billing practice is reasonable. Such a practice has been criticized in the 9th Circuit and the Eastern District because it inflates time spent on the matter. *Welsh v. Metro Life Ins. Co.*, 480 F.3d 942, 948-949 (9th Cir. 2007). That Court held that the "practice of billing by the quarter-hour resulted in a request for excessive hours … because counsel billed a minimum of 15 minutes for numerous phone calls and e-mails that likely took a fraction of the time" and "review of the time sheet confirms that it is replete with quarter-hour or half-hour charges for drafting of letters, telephone call and intraoffice conferences." *Id.*

The same appears throughout HDMN's invoice, inflating their portion of the fee claim unreasonably. Some examples include AOE's entries on 7/31/18 (.25) and 8/1/18 (.25) to receive a notice of vehicle inspection and email correspondence to KLG regarding MSC. Then he billed .25 on 8/13/18 for an email regarding MSC date vacated. LSC billed .5 on 11/26/18 to draft consent to magistrate judge, a one-page form where no "drafting" is necessary. He also billed .25 on 1/3/19 to review the Court's docket and on 1/7/19 to review the local rules regarding a joint exhibit list. Billing a minimum of a quarter-hour for every task creates a question about entries of 2.0 or 3.5 hours as well as smaller increments.

## 2. The Hourly Rates Sought in This Matter are Unreasonable.

Plaintiff fails to offer any admissible evidence to support her claim for exorbitant hourly rates. All that is offered are the hearsay statements of Steve Mikhov about the rates supposedly charged by several other lawyers for allegedly doing the same lemon law work. But there is no proof of their rates, their qualifications, the communities in which they practice, or whether they are paid those rates for lemon law cases like this one. It is unlikely they are given that all of these matters are purportedly purely contingent matters. Mr. Mikhov also offers a series of orders in other cases in which Mr. Mikhov claims the courts held their rates and fees to be reasonable. He excludes numerous other orders in which the courts did not find their rates and fees to be reasonable.

Better evidence of appropriate hourly rates, if the Court is inclined to consider rulings in other cases, is found in the Eastern District's order from the *Hall* case, an order missing from those Mr. Mikhov presents to the Court. Exhibit A to the Tudzin Decl. As that order explained, attorney fees are to be calculated with "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895, n. 11 (1984); PLCM Group, Inc. v. Drexler (2000) 22 Cal.4th 1084, 1096. "Relevant community" is defined as "the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

The Supreme Court placed the burden squarely on the fee applicant to establish their rates are reasonable in the community with "satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. (*Blum v. Stenson*, 465 U.S. 886, 895-896 n. 11.) Having failed to provide such satisfactory evidence, Plaintiff is not entitled to recover all of the fees she claims. The hourly rates should be significantly reduced.

### B. An Award of Fees Totaling $132,486.25 Based on Hourly Rates as High as $825 per Hour if a Multiplier is Granted, is Unreasonable.

Plaintiff's counsel routinely relies on *Goglin v. BMW of North America, LLC, et al.* (2016) 4 Cal.App.5th 462 for the proposition that their high hourly rates and excessive fees are somehow reasonable. But what they miss is the fact that the *Goglin* court acknowledged the buyer in a Song-Beverly case bears the burden of proving that the fees incurred were "allowable," "reasonably necessary to the conduct of the litigation," and were "reasonable in amount." (*Id.* at 470.) *Goglin* further held that if the time expended is not reasonable, the court must take that into account and award less than requested. (*Id.*) Finally, the *Goglin* court, relying on *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, held that it would "review an award of attorney fees under [the Song-Beverly Act] for abuse of discretion … the 'experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his [or her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.'" (*Goglin* at 470-471.)

Plaintiff also relies on *Graciano v. Robinson Ford Sales, Inc.*, supra, to support its request for rates as high as $650 per hour and a 1.5 multiplier but misconstrues the import of that case with respect to an appropriate hourly rate. In finding that rates of $270-$350 per hour were reasonable, the *Graciano* court held that $250 per hour was an abuse of discretion because the trial court relied on an unrelated local rule capping expert fees. (144 Cal. App.4th at 155.) The finding had absolutely nothing to do with an evaluation of reasonableness of that rate in a lemon law case. Moreover, *Graciano* endorses the principle that "a lodestar figure may be adjusted not just upward but also, where appropriate, *downward*" in the court's discretion. (144 Cal. App.4th at 160, emphasis in original.)

To be clear, Defendant is not arguing that Plaintiff's fee recovery should be limited by, or proportionate to, the jury verdict. Defendant's argument is more

straightforward than that – under all of the circumstances of this case, (1) the community in which it was pending, (2) the value of the vehicle at issue, (3) the Defendant's offer to repurchase the vehicle before a lawsuit was filed, (4) the Defendant's Rule 68 Offer prior to trial of $80,000 and the fact that Plaintiff only recovered $4,000 more after spending $90,931.25 to achieve that result, and (5) most simply, the basic nature of the litigation tasks involved that did not warrant the heavy involvement of two firms at the high hourly rates not supported by the evidence, the fee request is unreasonable.

In *Goglin,* the court held that the statute requires a trial court to "ascertain under all the circumstances of the case" whether the fees are reasonable, and those circumstances "may include, but are not limited to, factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved." (*Id.* at 470.) Those factors, when applied to the facts of this case demonstrate that the fees counsel seeks are unreasonably extreme and should be significantly reduced.

### C. There Was No Novelty to this Case and the Claims Were Not Difficult.

On the one hand, Plaintiff's counsel proudly sets forth all the tasks they were able to complete in little time because they've done it all before. On the other hand, they portray this lemon law case, and all they handle, as far more complicated and intricate than is true. There certainly was nothing novel or difficult about this Plaintiff's claim. It was a basic Song-Beverly action with a fraud component common to virtually every complaint these same lawyers include in their cases. The Plaintiff's strategy here was identical to the strategy employed in all cases against defendants and appears to be designed to incur the maximum amount of attorney's fees rather than reach a cost and time efficient resolution in the best interests of the client. Counsel served a standard complaint and standard discovery. There were only a handful of depositions and a vehicle inspection. The trial documents were

the same that Plaintiff's counsel uses in every case. They followed the same playbook using the same stock pleadings they have used countless times before. Yet they billed more than $130,000 to do so.

The jury verdict was not particularly exceptional. The jury awarded only a buyback plus slightly more than one civil penalty. The range of damages is driven strictly by the value of the car plus incidental and consequential damages and less a mileage offset. It is a simple calculation governed by statute and does not change because of any particular skill or expertise of Plaintiff's lawyers. The buyback plus civil penalties of a more expensive car will net a higher award at trial if rendered. The same calculation will result in a lesser award for a less expensive vehicle. It is that simple. Plaintiff did not recover a double civil penalty. She recovered nothing for her fraud claim because it was dismissed before trial on a Rule 50 motion. And, most notably in this case, the verdict was only $4,666 more than Defendant's last offer, but Plaintiff's counsel spent over $90,000 to recover that amount.

Plaintiff's motion fails to demonstrate how $132,486.25 in attorney's fees generated by 15 lawyers from two firms at rates as high as $825 per hour if a multiplier is added, could possibly be within the realm of reasonableness for litigating this straightforward case. It is not.

### D. No Special Skill Was Required to Handle This Case.

Further, no special skill was displayed in presenting this claim. The legal issues were common to Song-Beverly cases in which Plaintiff's counsel specializes; this is so even for the fraud claim. The case did not require special knowledge of Defendant's protocols and procedures, technical knowledge beyond what the experts offered in their testimony, or engineering issues. There was no complexity in the factual issues presented. All that was required was competent legal counsel that would be expected by any lawyer taking on the representation of a client in a dispute.

Even still, Plaintiff's counsel's firm hold themselves out as specialists in consumer protection laws and they handle numerous claims against vehicle manufacturers frequently. Thus, knowledge of automobiles would be a standard prerequisite for such attorneys and their already unreasonably high billing rates already reflect that expertise. Counsel's allusion to Defendant as "a corporate behemoth" is entirely irrelevant. Counsel fails to show how the resources of Defendant and its counsel is relevant to Plaintiff's counsel's skills. Expertise is established by specific evidence in the record, not by inappropriate comparisons.

### E. There is No Evidence That This Was a Purely Contingent Case.

There is a risk and delay inherent in every contingency matter. There was nothing unusual or taxing to set this case apart from any others. In fact, there was less here, where, from the very first Rule 68 Offer Defendant made to settle the case, it included payment of attorney's fees, costs, and expenses. Plaintiff could have eliminated the risk and the delay by negotiating a resolution early in the case. Instead, she opted to take her case to a jury and came away with far less than she might have anticipated. Defendant should not now have to bear the unreasonable expense of Plaintiff's miscalculation.

Moreover, Plaintiff fails to offer any evidence that this was a "purely contingent" case as she claims. There are no specifics about her retention of counsel. Counsel claims there was a contingent risk posed by this case, but do not include a copy of the fee agreement to support that claim. Does the agreement provide for apportionment of any settlement to counsel? Are those apportionments categorized as attorney's fees? Moreover, what is the fee arrangement between KLG and HDMN – is HDMN paid any or all of its fees regardless of the outcome of the case or this motion? If so, the Court should be apprised of these facts in order to determine a final award of reasonable attorney's fees allowing for any appropriate set offs in favor of Defendant. It would be unreasonable for any of Plaintiff's

counsel to receive a double recovery, money from the verdict amount and some amount in response to the fee request, not disclosed here to the Court.

### F. Plaintiff's Fee Claim Is Excessive and No Multiplier Is Warranted.

It is up to the Court to determine the appropriate amount of the reasonably incurred attorneys' fees – the touchstone or loadstar figure. Once the Court has determined an appropriate touchstone or lodestar figure, the Court can then determine whether that figure should be adjusted and, if it should be adjusted, whether that adjustment should be up or down. *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 997. As set forth above, if the "time expended or the monetary charge being made for the time expended are not reasonable under all circumstances, then the court must take this into account and award fees in a lesser amount." (*Nightingale v. Hyundai Motor America, supra*, at 104 and *Goglin v. BMW of North America, LLC, et al., supra*, at 470.) "A reduced award might be fully justified by a general observation that an attorney overlitigated a case …." (*Donahue v. Donahue*, (2010) 184 Cal.App.4th 259, 271 (emphasis added).)

In this case, Plaintiff seeks a multiplier of 1.5 times the amount of the fees. If this multiplier were applied, Mr. Mikhov and Mr. Daghighian would be compensated at the rate of $825 per hour. By any stretch of the imagination there is no basis for such high billing rates and inflated fees for performing basic litigation tasks given the nature of the case and the manner in which it was handled.

Despite the complete lack of precedential value and the misleading way in which they are presented, Plaintiff's counsel attached cherry-picked orders from other courts to Mr. Mikhov's declaration in what appears to be an effort to convince this Court that every court that has considered a fee application from this firm has concluded the fees were reasonable and a lodestar enhancement was appropriate. With this opposition, Defendant has served objections to the exhibits because they have no precedential value. This Court has no obligation to follow those orders.

Beyond that however, Plaintiff's counsel has violated the duty of candor owed to the Court by failing to provide the Court with the one order that reflects the Eastern District's view of the work of these same lawyers from the *Hall* case, the need for lawyers from Los Angeles to handle a case in Fresno, the number of hours they bill, the inappropriate nature of some of the time entries, HDMN's practice of billing in quarter hour increments, and the fact that the lawyers' hourly rates are not warranted nor reflective of the rates commonly charged in this community.

The court here, as the Supreme Court was in the *Ketchum v. Moses* case, should be concerned that "the substantial enhancement herein purportedly based on exceptional quality of representation may have included improper double counting." *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1142. The court in *Ketchum* warned that by using counsel's qualifications to justify both the hourly rate ***and*** the multiplier "the court appears to have counted the same factor twice." *Id*. Plaintiff's counsel is not entitled to such a windfall. Moreover, the *Ketchum* Court held that once an award of fees was mandatory, it is no longer contingent and it is erroneous for the "court to apply an enhancement for contingent risk" for fees accrued after that date. *Id*.

Instead, a negative multiplier is warranted. While a court may adjust a lodestar award by taking the various factors discussed above into account, the Court is certainly not required to include a fee enhancement based on any of those factors. *Id.* at 1138. A fee enhancement is warranted ***only*** if the Court determines that the lodestar figure would represent ***less than the fair market value*** for the legal services rendered in the case. *Holguin*, 229 Cal.App.4th at 1333. Here, each of the relevant factors suggests that the fees should be adjusted downward. To the extent any fee award might be rendered at all, a negative fee adjustment is permitted and, here, necessary.

### III. <u>CONCLUSION</u>

For all of the foregoing reasons, Defendant respectfully requests that the Court significantly reduce the hourly rates and total fees awarded to Plaintiff. The following suggestion is based on all of the above:

| KLG (requesting $30,332.50) | RATE | HOURS | LODESTAR |
|---|---|---|---|
| S. Mikhov | $300 | 6.0 | $1,800 |
| A. Morse | $225 | 4.3 | $967.50 |
| C. Urner | $225 | 3.0 | $675 |
| D. Devabose | $225 | 9.9 | $2,227.50 |
| D. Hernandez | $225 | 18.5 | $4,162.50 |
| J. Fennell | $225 | 8.2 | $1,845 |
| K. Stephenson-Cheang | $250 | 10.1 | $2,525 |
| M. Rosensweig | $250 | 5.8 | $1,450 |
| R. Higgins | $250 | 2.5 | $625 |
| Subtotal | | | **$16,277.50** |
| **HDMN** (requesting $102,153.75) | | | |
| S. Daghighian | $275 | 57.75 | $15,881.25 |
| L. Castruita | $225 | 74.5 | $16,762.50 |
| E. Schmitt | $175 | 3.5 | $612.50 |
| K. Jacobson | $175 | .25 | $43.75 |
| L. Martin | $175 | 16.75 | $2,931.25 |
| A. Eaton | $175 | 27.75 | $4,856.25 |
| A. Plata | $75 | 0 | 0 |
| Subtotal | | | $41,087.50 |
| (less 20% = | | | **$32,870.00)** |
| TOTAL: | | | $49,147.50 |
| Less 50% for lack of reasonableness under the facts | | | **$24,573.75** |

Date: March 29, 2019                                 ONGARO PC

                                                                  By: /s/ Scott S. Shepardson
                                                                        Scott S. Shepardson
                                                                        Attorneys for Defendant
                                                                        FCA US LLC