**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

SANDY G. SELF,

        Plaintiff,

    v.

FCA US LLC,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 1:17-cv-01107-SKO

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEY FEES, COSTS, AND EXPENSES

(Doc. 118)

## I.    INTRODUCTION

Plaintiff Sandy G. Self ("Plaintiff") filed this suit against Defendant FCA US LLC ("FCA," "Chrysler," or "Defendant") for claims under the Song-Beverly Consumer Warranty Act ("Song-Beverly Act") and for fraudulent concealment.  On February 14, 2019, the jury returned a verdict in favor of Plaintiff on her Song-Beverly Act claims in the amount of $84,666 in damages and civil penalties.  (Doc. 110.)

Presently before the Court is Plaintiff's Motion for Attorney's Fees, Costs, and Expenses filed on March 14, 2019, in which Plaintiff seeks $132,486.25 in legal fees, $21,726.72 in costs, and an "enhancement" of $66,243.13 (1.5 multiplier) from Defendant.  (Doc. 118 (the "Motion").)  On March 29, 2019, Defendant filed its opposition to the Motion (Doc. 119), and Plaintiff filed her reply in support of the Motion on March 10, 2019 (Doc. 120).

1

The Court reviewed the parties' submissions and determined, pursuant to Local Rule 230(g), that the matter was suitable for decision without oral argument. The Court accordingly vacated the hearing on the Motion. (Doc. 121.) For the reasons set forth below, the Motion is **GRANTED** in part, in the modified amount of **$41,633.86**.

## II.   BACKGROUND

Plaintiff purchased a 2011 Jeep Liberty on December 9, 2010 (the "Subject Vehicle"). (Doc. 1-1 at ¶ 8.) The Subject Vehicle was manufactured by Defendant and came with a written warranty. (*Id.* at ¶¶ 4, 139, 143.) According to Plaintiff, the Subject Vehicle "was delivered to [her] with serious defects and nonconformities to warranty[,] and developed other serious defects and nonconformities to warranty including, but not limited to transmission, electrical, suspension, and engine defects" (*Id.* at ¶ 140.) Plaintiff claims that Defendants were unable to repair the Subject Vehicle to conform to the written warranty after a reasonable number of opportunities to do so, and that Defendants failed promptly to replace or repurchase the Subject Vehicle. (*Id.* at ¶¶ 145–147.)

Plaintiff alleges that the Subject Vehicle "was factory-equipped" by Defendant with a Totally Integrated Power Module ("TIPM"), which "is the chief component in the Subject Vehicle's power distribution systems and consists of a computer, relays, fuses, and controls." (Doc. 1-1 at ¶¶ 11, 12.) According to Plaintiff, "[t]he TIPM provides the primary means of voltage distribution and protection for the entire vehicle . . . ." (*Id.* at ¶ 12.) Electrical systems receiving power from the TIPM include the Subject Vehicle's "safety systems, security system, ignition system, fuel system, electrical powertrain, and . . . comfort and convenience systems." (*Id.* ¶ 13.)

Plaintiff contends the TIPM installed in the Subject Vehicle was defective and "thus fails to reliably control and distribute power to various vehicle electrical systems and component parts," which caused the Subject Vehicle's check engine light to illuminate frequently and resulted in "[m]ultiple electrical issues" and "numerous recalls." (Doc. 1-1 at ¶¶ 14–15.) According to Plaintiff, Defendant "had superior and exclusive knowledge of the TIPM defects [] and knew or should have known that the defects were not known by or reasonably discovered by Plaintiff before [she] purchased or leased the Subject Vehicle." (Doc. 1-1 at ¶ 18.) However, Defendant did not disclose the defect to Plaintiff "prior

to the purchase of the Subject Vehicle or at any point during ownership of the Subject Vehicle." (*Id.* at ¶ 90.)

Defendant offered to repurchase or replace the Subject Vehicle on April 1, 2016 (*see* Doc. 32-3), which Plaintiff did not accept. On July 13, 2017, Plaintiff filed her complaint in Fresno County Superior Court, Case No. 17CECG02355. (*See* Doc. 1-1 at 3) Plaintiff pleaded the following causes of action in her complaint: (1) breach of an express warranty pursuant to the Song-Beverly Act, (2) breach of an implied warranty pursuant to the Song-Beverly Act, and (3) fraudulent inducement. (*Id.* at 3, 27–32.) Plaintiff's prayer for relief included, but was not limited to: general, special and actual damages; recession of the purchase contract and restitution of all monies expended; diminution in value; a civil penalty totaling two times her actual damages, punitive damages, and reasonable attorney fees and costs. (*See id.* at 32) Defendant filed its answer on August 15, 2017, asserting in part that "Plaintiff's entire Complaint [was] moot based upon the fact that FCA US LLC . . . offered to repurchase Plaintiff's vehicle" as a remedy under the Song-Beverly Act. (Doc. 1-3 at ¶ 27.)

On August 16, 2017, Defendant filed a Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441(a) and 1446(a), thereby initiating the matter with this court. (Doc. 1) Shortly thereafter, the parties began engaging in discovery, including written discovery, inspection of the Subject Vehicle, and depositions. (Doc. 118-2, Declaration of Steve Mikhov in Support of Plt.'s Mot. For Attorney's Fees ("Mikhov Decl.") at ¶ 11, 14; Doc. 119 at 6, 9, 15.) The Court held a Scheduling Conference with the parties on December 8, 2017 (Doc. 12), and the matter was set for trial before Chief District Judge O'Neill in January 2019. Trial was later continued to February 2019 before the undersigned, following the parties' consent to magistrate judge jurisdiction. (Docs. 54, 55, 58.)

On February 8, 2018, Defendant served Plaintiff with an Offer of Judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure[1], which offered to resolve the case for $45,000, plus costs and reasonable attorney's fees. (Doc. 119-2, Declaration of Lisa Schwartz Tudzin in Support of Def.'s Opp'n

---

[1] Rule 68 provides that a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. Fed. R. Civ. P. 68(a). If the opposing party does not accept the offer, and if the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made. *Id.* at 68(d).

to Plt.'s Mot. for Attorney's Fees ("Tudzin Decl."), at ¶ 5 and Ex. B.) Plaintiff declined the offer. Nine months later, on November 8, 2018, Defendant served Plaintiff with an Amended Offer of Judgment pursuant to Rule 68, which offered to settle the matter for $80,000, plus costs and reasonable attorney's fees. (Tudzin Decl. at ¶ 6 and Ex. C.) Plaintiff again declined the settlement offer. The parties attended a Settlement Conference in this matter on January 28, 2019. (Doc. 70.) According to Plaintiff, Defendant "did not move from its [R]ule 68 offer," and no settlement was reached. (Doc. 118-3, Declaration of Sepehr Daghighian in Support of Plt.'s Mot. For Attorney's Fees ("Daghighian Decl.") at ¶ 18.)

The case proceeded to trial on February 11, 2019. (Docs. 98, 99.) On the third day of trial, after both parties rested, Defendant moved for judgment as a matter of law pursuant to Rule 50 of the Federal Rule of Civil Procedure on Plaintiff's fraudulent concealment cause of action and her claim for punitive damages. (Doc. 103.) Plaintiff did not oppose the motion but stated on the record her objections to certain evidentiary rulings. (*Id.*) The Court granted the motion and directed entry of judgment in favor of Defendant on Plaintiff's fraudulent concealment and punitive damages claims. (*Id.*)

On February 14, 2019, the jury returned a verdict in favor of Plaintiff on her remaining Song-Beverly Act claims in the amount of $37,233 in damages and $47,433 in civil penalty. (Doc. 110.) The Court entered judgment in accordance with the jury verdict on February 15, 2019. (Doc. 111.)

Plaintiff timely filed her Motion for fees and costs, which is now pending before the Court. (Doc. 118.) Defendant filed its opposition to the Motion on March 29, 2019 (Doc. 119), to which Plaintiff filed a reply on March 10, 2019 (Doc. 120). Because the matter was suitable for decision without oral argument, the matter was taken under submission pursuant to Local Rule 230(g) on April 11, 2019.

## III.  APPLICABLE LAW

### A.  Legal Standard

"In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law. *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007); *see also Mangold v. Cal. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (noting that in a diversity action, the Ninth Circuit "applied state law in determining not only the right to fees, but also in the method of calculating the

fees"). As explained by the Supreme Court, "[u]nder the American Rule, 'the prevailing litigant ordinarily is not entitled to collect a reasonable attorneys' fee from the loser.'" *Travelers Casualty & Surety Co. of Am. v. Pacific Gas & Electric Co.*, 549 U.S. 443, 448 (2007) (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975)). However, a statute allocating fees to a prevailing party can overcome this general rule. *Id.* (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967)). The "fundamental objective" of such a provision "is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases. *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 565 (2005).

Under California's Song-Beverly Act, a prevailing buyer is entitled "to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1794(d). The Song-Beverly Act "requires the trial court to make an initial determination of the actual time expended; and then to ascertain whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable." *Nightingale v. Hyundai Motor America*, 31 Cal. App. 4th 99, 104 (1994). A trial court is required to conduct an "independent assessment of the evidence presented" regarding the reasonableness of the fees incurred in the representation. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1139 (2001).

"A prevailing buyer has the burden of showing that the fees incurred were 'allowable,' were 'reasonably necessary to the conduct of the litigation,' and were 'reasonable in amount.'" *Id.* (quoting *Levy v. Toyota Motor Sales, U.S.A., Inc.*, 4 Cal. App. 4th 807, 816 (1992)); *see also Goglin v. BMW of North America, LLC,* 4 Cal. App. 5th 462, 470 (2016) (same). The court may consider "factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved." *Nightingale,* 31 Cal. App. 4th at 104; *Bratton v. FCA US LLC*, Case No. 17-cv-01458-JCS, 2018 WL 5270581, at *3 (N.D. Cal. Oct. 22, 2018) (same). If the court finds the time expended or fee request "is not reasonable under all the circumstances, then the court must take this into account and award attorney fees in a lesser amount." *Nightingale,* 31 Cal. App. 4th at 104*; see also Graciano v. Robinson Ford*

*Sales, Inc.*, 144 Cal. App. 4th 140, 161 (2006) (A court may also, "for an appropriate reason," make a downward adjustment under the lodestar adjustment method, for example where the court finds that time billed was excessive or that the tasks performed were in connection with unrelated claims upon which the party did not prevail.).

California law allows for a fee award to "be enhanced under some circumstances." *Graham*, 34 Cal. 4th at 579. A fee award may be adjusted "to fix a fee at the fair market" to reflect "(l) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Ketchum*, 24 Cal. 4th at 1131. "One of the most common fee enhancers [ ] is for contingency risk" of nonpayment and delayed payment, both of which may cause "competent counsel [to] be reluctant to accept fee award cases" that are in the public interest. *Graham*, 34 Cal. 4th at 582. Additionally, a fee multiplier may be appropriate when "an exceptional effort" by the plaintiff's lawyers "produced an exceptional benefit" for the client or the community. *Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819, 838 (2001).

If a fee request is opposed, "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." *Premier Med. Mgmt. Sys. v. Cal. Ins. Guarantee Assoc.*, 163 Cal. App. 4th at 550, 564 (2008). Rather, the opposing party has the burden to demonstrate the hours spent are duplicative or excessive. *Id.* at 562, 564; *see also Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 101 (2009) ("[t]he party opposing the fee award can be expected to identify the particular charges it considers objectionable").

## B. Evidentiary Objections

Both parties object to evidence presented in support of and in opposition to the motion for fees and costs. (Doc. 119-1; Doc. 120-3.) The Court has read and considered each objection made by Defendant and Plaintiff and declines to take up most of the boilerplate objections, as the Court did not rely on counsel's statements about the facts of the case or the fees charged by other lawyers. The Court specifically overrules the objections to counsel's statements concerning the rates charged by their employees and partners, as they are competent to testify about such matters and the information is

6

relevant to the Motion. The Court also specifically overrules the objections to Defendant's offers of judgment served pursuant to Fed. R. Civ. P. 68, as Rule 68 specifically provides that unaccepted offers are admissible "in a proceeding to determine costs." Fed. R. Civ. P. 68(b). The Court further takes judicial notice of orders of other judges' rulings on fee requests, *see* Fed. R. Evid. 201(b)(2). Finally, to the extent the Court considers in its analysis any other evidence to which there was an objection, such objection is overruled.

## IV. DISCUSSION

As a prevailing buyer, Plaintiff is entitled to an award of fees and costs under the Song-Beverly Act. *See* Cal. Civ. Code § 1794(d); *see also Goglin,* 4 Cal. App. 5th at 470. Here, Plaintiff seeks: (1) an award of attorney's fees pursuant to the Song-Beverly Act in the amount of $132,486.25; (2) a lodestar multiplier of 1.5, in the amount of $66,243.13; and (3) actual costs and expenses of $21,726.72. (Doc. 118-1 at 7.) Thus, Plaintiff seeks a total award of $220,456.10. (*Id.*) Defendant acknowledges that "Plaintiff is entitled to recover attorney's fees, costs, and expenses," but contends the amounts requested are unreasonable. (*See* Doc. 119 at 6.)

### A. Plaintiff's Request for Attorney's Fees

Plaintiff seeks $30,322.50 for the work completed by Knight Law Group LLP ("Knight Law Group") and $102,153.75 for work completed by Hackler Daghighian Martino & Novak, P.C. ("HDMN"), whom Knight Law Group brought in to serve as lead trial counsel and prepare the case for trial. (Doc. 118-1 at 10, 13.)

### 1. Legal Standard

A fee applicant must provide time records documenting the tasks completed and the amount of time spent. *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). Under California law, a court "must carefully review attorney documentation of hours expended" to determine whether the time reported was reasonable. *Ketchum,* 24 Cal.4th at 1132 (quoting *Serrano v. Priest*, 20 Cal.3d 25, 48 (1977)). Thus, evidence provided by the fee applicant "should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended." *Christian*

*Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008). The court must exclude "duplicative or excessive" time from its fee award. *Graciano*, 144 Cal.App.4th at 161; *see also Ketchum*, 24 Cal.4th at 1132 ("inefficient or duplicative efforts [are] not subject to compensation").

The Supreme Court has explained that attorney fees are to be calculated with "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1096 (2000) ("[t]he reasonable hourly rate is that prevailing in the community for similar work"). The fee applicant has the burden to establish the rates are reasonable with the community and meets this burden by "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11.

In general, the "relevant community" for purposes of determining the prevailing market rate is the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir. 2008). Thus, when a case is filed in this Court, "[t]he Eastern District of California, Fresno Division, is the appropriate forum to establish the lodestar hourly rate." *See Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011); *see also Hall v. FCA US LLC*, Case No. 1:16–cv–0684–JLT, 2018 WL 2298431 (E.D. Cal. May 21, 2018) (in a diversity action awarding fees under the Song-Beverly Act, the court looked to hourly rates in the Fresno Division, and adjusted the lodestar accordingly); *Garcia v. FCA US LLC*, Case No. 1:16–cv–0730–JLT, 2018 WL 1184949 (E.D. Cal. Mar. 7, 2018); *Gordillo v. Ford Motor Co.*, Case No. 1:11-cv-01786, 2014 WL 2801243 (E.D. Cal. June 19, 2014).

A court may apply "rates from outside the forum . . . . 'if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" *Barjon v. Dalton*, 132 F.3d 496 (9th Cir. 1997) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)).

### 2. Fee Request by Knight Law Group

Plaintiff seeks $30,322.50 for the work completed by Knight Law Group. (Doc. 118-1 at 13.)

*///*

8

### a. Hours Worked

The billing records submitted by Knight Law Group indicate the attorneys expended 80 billable hours on this action, through the preparation of the motion for fees and costs. (*See* Mikhov Decl., Ex. A.) Defendant objects to the hours reported by Plaintiff's counsel and contends that "instead of resolving the case" early in the litigation, Plaintiff's counsel "plowed forward . . . utilizing two firms and a total of 15 attorneys who, by their own admission, duplicated much of the work that Plaintiff's counsel use in every other case they handle against Defendant." (Doc. 119 at 9.) According to Defendant, Knight Law Groups invoices "evidence[] numerous instances of inappropriate hours billed by senior lawyers like Mr. Mikhov to review basic notices and pleadings or to draft them, duplicative billing, travel to Fresno, and lawyers and a paralegal billing for purely clerical time that should be excluded from the lodestar calculation." (*Id.* at 10.) Defendant contends it would "be appropriate to exclude the entire invoice from either" Knight Law Group or from HDMN because "[t]here is inherent duplication of effort in a staffing strategy that involves 15 lawyers."

Contrary to Defendant's contention, the Court's review of the billing records for Knight Law Group did not reveal duplicate tasks between the junior and senior counsel that must be omitted from the lodestar. For example, while Defendant points to certain billing entries of Mr. Higgins and Mr. Debavose as entailing the preparation of "duplicative" deposition notices and subpoenas (*see* Doc. 119 at 10–11), those entries show the preparation of *amended* notices and subpoenas—not the preparation of the *same* documents, as Defendant asserts. (*See* Mikhov Decl., Ex. A at 20–21.)

In addition, although Defendant objects to virtually all of Mr. Mikhov's 13.5 billed hours because "he had nothing to do with trial preparation or presentation" (*see* Doc. 119 at 11), the billing records demonstrate that Mr. Mikhov billed only .5 hours for tasks that fall within the category of "trial preparation or presentation." (*See* Mikhov Decl., Ex. A at 19–24.) Moreover, other than Defendant's conclusory statement, there is nothing in the record that would suggest that Mr. Mikhov "had nothing to do with" preparing the case for trial. To the contrary, the case docket shows that Mr. Mikhov is one of the "lead attorneys" on the case, and Mr. Mikhov's declaration indicates that HDMN was associated into the case to "work[] *with*," not to supplant, Knight Law Group. (Mikhov Decl. at ¶ 13.) Further,

Defendant does not identify any duplicative tasks between the two firms. Indeed, the Ninth Circuit "recognized that 'the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort.'" *McGrath v. County of Nevada*, 67 F.3d 248, 256 (1995) (quoting *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989)). Accordingly, the Court declines to reduce the hours billed by Knight Law Group on these grounds.

### b.    Billable Rates

Plaintiff presents no evidence that local counsel was either unwilling or unable to prosecute her claims in this action.[2] Thus, the Court must determine whether the hourly rates requested by counsel are reasonable for the Fresno Division of the Eastern District. *See, e.g., Gordillo*, 2014 WL 2801243 at *5-6.

The attorneys from Knight Law Group seek hourly rates ranging from $275 to $550. (Mikhov Decl. at ¶¶ 18–26.) Recently, Magistrate Judge Jennifer L. Thurston reviewed the billing rates for the Fresno Division and reduced the rates of Knight Law Group attorneys Mr. Mikhov ($300), Mr. Higgins ($300), Ms. Stephenson-Cheang ($250), Ms. Morse ($225), and Mr. Devabose ($175). *See Hall*, 2018 WL 2298431, at *7; *Garcia*, 2018 WL 1184949 at *6. The Court finds that these adjusted hourly rates are reasonable for the Fresno Division.

In addition, based on Magistrate Judge Thurston's analysis, the Court adjusts the hourly rate of Mr. Rosensweig, who began practicing law in 2012, to $225, and adjusts the hourly rates of Messrs. Urner and Fennell, who began practicing law in 2016 and 2018, respectively, to $175. *See Hall*, 2018 WL 2298431, at *7 (adjusting rates for counsel who began practicing law between 2011 and 2013 to $225); *Garcia*, 2018 WL 1184949, at *6 (adjusting rates for counsel who had been in practice "for less than five years" to $175). *See also Silvester v. Harris*, No. 1:11–CV–2137 AWI SAB, 2014 WL 7239371

---

[2] Although Mr. Mikhov identifies four cases in which the attorneys were awarded fees from state courts within the Eastern District boundaries—including Fresno County and Tulare County—the state courts' orders offer no analysis regarding whether the hourly rate was reasonable for local counsel. (*See, e.g.* Mikhov Delc., Exs. D–J, L, N–O.) Given the lack of evidence that local counsel was either unwilling to take Plaintiff's case or unable to do so, the hourly rates will be reduced for purposes of calculating the lodestar. *See Gordillo*, 2014 WL 2801243, at *5–6; *Barjon v. Dalton*, 132 F.3d 496, 500–02 (9th Cir. 1997) (affirming the district court's decision to decline an award of out-of-district billing rates where the fee applicants failed "to prove the unavailability of local counsel," and reduced the award to the hourly rates in the relevant community).

at *4 (E.D. Cal. Dec. 17, 2014) (For attorneys with "less than ten years of experience . . . the accepted range is between $175 and $300 per hour."); *Willis v. City of Fresno*, No. 1:09–CV–01766–BAM, 2014 WL 3563310, at *11 (E.D. Cal. July 17, 2014); *Gordillo*, 2014 WL 2801243, at *6. Finally, the hourly rate of Ms. Hernandez, who "frequently works with [Knight Law Group] and in lemon law cases" (*see* Mikhov Decl. at ¶ 23), will be adjusted to $300: while Ms. Hernandez has been practicing law since 1997, the Court has no information as to how much of that time she has spent handling lemon law cases. Accordingly, Plaintiff has not met her burden of showing that Ms. Hernandez's experience entitles her to a higher rate than that of Messrs. Mikhov and Higgins. *See Blum*, 465 U.S. at 896 n.11.

### 3. Fee Request by HDMN

Plaintiff seeks $102,153.75 for work completed by HDMN, who, as noted above, associated into the case to serve as lead trial counsel and prepare the case for trial. (Doc. 118-1 at 10, 13.)

#### a. Hours Worked

According to its billing records, HDMN legal staff expended 253.5 billable hours on this action, through the preparation of the motion for fees and costs. (*See* Daghighian Decl., Ex. A.) Defendant objects to the hours billed by HDMN as unreasonable, noting that the billing records include "several instances of duplicative billing" and billing for "purely clerical tasks," and that the firm improperly billed in quarter-hour increments. (Doc. 119 at 11–12.) According to Defendant, the practice of billing in quarter-hour increments "has been criticized in the [Ninth] Circuit and the Eastern District because it inflates time spent on the matter." (*Id.*)

#### i. *Duplicative and clerical tasks*

Review of the time sheets from HDMN reveals tasks that were duplicative or purely clerical and should be excluded from the lodestar calculation. *See Missouri v. Jenkins,* 491 U.S. 274, 288 n. 10 (1989). Specifically, attorney Lauren Martin recorded duplicative entries on February 8, 2019, for (1) revising trial graphics, "repair order history," and opening statement (1.5 hours); (2) preparing trial examination questions for Tina Dietrich (4.0 hours); (3) reviewing Dr. Thomas Lepper's expert report and preparing trial examination questions (2.0 hours); and (4) reviewing Dr. Barbara Luna's expert report and preparing trial examination questions (2.5 hours). (*See* Daghighian Decl. Ex. A at 15–16.) On

February 10, 2019, Ms. Martin recorded two entries for preparing the deposition summary of Ms. Dietrich (6.0 hours). (*See id.* at 16.) The Court finds that a reduction of 8.0 hours is warranted for these duplicative entries.[3] *See Hensley*, 461 U.S. at 433-34 (hours requested may be reduced where expenditure of time deemed excessive, duplicative, or otherwise unnecessary).

Andrea Plata, a paralegal, recorded 2.75 hours in October 2017 for tasks including printing and saving documents, preparing case files, reviewing the Court's scheduling order, and calendaring deadlines. (*See* Daghighian Decl., Ex. A. at 10.) Similarly, attorney Asa Eaton recorded 3.5 hours in June and July 2018 for organizing and preparing exhibits for deposition. (*See id.* at 10–11.) Courts have discounted attorney and paralegal billing entries for "clerical tasks" such as "filing, transcript, and document organization time." *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009); *see also Harris v. L & L Wings, Inc.*, 132 F.3d 978, 985 (4th Cir. 1997) (approving the court's elimination of hours spent on secretarial tasks from the lodestar calculation); *Jones v. Metropolitan Life Ins. Co.*, 845 F. Supp. 2d 1016, 1027 (N.D. Cal. 2012) (discounting time for "filing or retrieving electronic court documents or copying"). Accordingly, the time expended on these clerical tasks will be deducted from the lodestar.

*ii.* *Unsupported and anticipated time*

The Court declines to award the 12.5 hours of time that counsel anticipated would be spent in reviewing the opposition to the motion, drafting the reply brief, or preparing and attending the hearing on the motion for fees. (*See* Daghighian Decl., Ex. A at 17.) No evidence of the time actually spent on these efforts was documented to the Court, and the motion was taken under submission without oral arguments. The Court declines to speculate as to the actual time spent by counsel in preparing the reply brief, as it is the fee applicant's burden to present evidence to support a motion. *See Hensley*, 461 U.S. at 424; *Welch*, 480 F.3d at 945-46. Accordingly, the lodestar calculation below will reflect a reduction of 11.5 hours for this speculative time.

///

///

---

[3] Plaintiff concedes the impropriety of some these entries, noting in its reply that they were "due to a computer error." (*See* Doc. 120 at 12.)

### iii.     Quarter-hour billing

As Defendant observes, the minimum time recorded by attorneys at HDMN was 0.25 hours, which is a practice that has been criticized because it inflates time spent on the matter. *Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007) (affirming a reduction after finding the billing practice inflated the time recorded); *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1100-01 (D. Haw. 2010) (applying a 20% reduction for billing in quarter-hour increments); *Prudential Ins. Co. v. Am. v. Remington*, No. 2:12–cv–02821–GEB–CMK, 2014 WL 294989, at *4 (E.D. Cal. Jan. 24, 2014) (also applying a 20% reduction where counsel billed in 15 minute-increments).

In *Welch*, the district court "imposed a 20 percent across-the-board reduction on [the] requested hours" because the law firm "billed in quarter-hour increments." *Id.*, 480 F.3d at 948. The district court concluded the "practice of billing by the quarter-hour resulted in a request for excessive hours . . . because counsel billed a minimum of 15 minutes for numerous phone calls and e-mails that likely took a fraction of the time." *Id.* The Ninth Circuit also reviewed the time sheet and noted: "Our own review of the time sheet confirms that it is replete with quarter-hour or half-hour charges for the drafting of letters, telephone calls and intraoffice conferences." *Id.* The Court then affirmed the reduction for quarter-hour billing. *Id.*

Here, counsel billed upwards of 60 minutes on several occasions for reviewing email, simple documents, and the Court's minute orders. (*See, e.g.*, Daghighian Decl. Ex. A at 11–13.) For example, attorney Larry Castruita indicated that he spent 0.25 hours to review the Court's minute order continuing the settlement conference, 1.0 hour to "Receive and review email from Opposing counsel re: Consent to Magistrate Judge and research regarding same," and 0.50 hours drafting the consent. (*Id.* at 12) However, this appears excessive in light of the fact that "drafting" a document was not required, as the consent form filed by Mr. Daghighian (Doc. 55) was the single page, check-the-box form supplied by this Court and could not possibly take more than a few minutes to "research" and prepare. *See Calderon v. Astrue*, No. 1:08–cv–01015 GSA, 2010 WL 4295583, at *5 (E.D. Cal. Oct. 22, 2010) (observing the consent form is a "simple, check-the-box type form[] that require[s] little time and effort to complete and file," and awarding only 0.1 hour for its completion). Similarly, the 0.5 hour billed by Mr. Castruita to

prepare Plaintiff's final witness list (*see* Daghighian Decl., Ex. A at 14)—which was little more than half a page of writing—strongly suggests the reported time was inflated by the quarter-hour billing minimum.

Consequently, the Court exercises its discretion to reduce the remaining time reported by HDMN attorneys by 20% for purposes of the lodestar calculation. *See Hall*, 2018 WL 2298431, at *5 (imposing a 20% reduction to time recorded by HDMN attorneys due to "inflat[ion]" by billing in quarter-hour increments.) The Court finds this time reasonable for the nature of the tasks undertaken by each of the attorneys.

### b.    Hourly Rates

HDMN attorneys seek hourly rates ranging from $225 to $290. (Daghighian Decl. at ¶¶ 3–8.) As with Knight Law Group attorneys, Magistrate Judge Thurston recently adjusted the hourly rates for HDMN attorneys Mr. Daghighian ($275), Mr. Castruita ($225), and Ms. Martin ($175) to bring them within the range of reasonableness for the Fresno Division. *See Hall*, 2018 WL 2298431, at *7; *Garcia*, 2018 WL 1184949 at *6. The Court adopts these rates, and additionally adjusts the hourly rates of Messrs. Eaton and Schmitt, who began practicing law in 2017, to $175. *See*; *Garcia*, 2018 WL 1184949, at *6. *See also Silvester*, 2014 WL 7239371 at *4; *Willis*, 2014 WL 3563310, at *11; *Gordillo*, 2014 WL 2801243, at *6.

Based upon the prior surveys of the attorney fees in the Fresno Division, these hourly rates are reasonable. *See Silvester,* 2014 WL 7239371 at *4; *see also Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (concluding "the district court did not abuse its discretion either by relying, in part, on its own knowledge and experience" to determine reasonable hourly rates).

### 4.    Lodestar Calculation

The lodestar method calculates attorney fees by "by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonable hourly rate." *Florida v. Dunne*, 915 F.2d 542, 545 n.3 (9th Cir. 1990) (citing *Hensley*, 461 U.S. at 433). *Accord Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 489 (2016).

///

///

### a. Pre- Rule 68 Calculation

With the time and rate adjustments set forth above, the lodestar for the time expended prior to November 8, 2018, the date of the Rule 68 Amended Offer of Judgment, is **$26,010.00**:

| LAW FIRM | LEGAL PROFESSSIONAL | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| **Knight Law Group ($19,090.00)** | Steve Mikhov | 10.7 | $300 | $3,210.00 |
| | Russell Higgins | 5.7 | $300 | $1,710.00 |
| | Diane Hernandez | 18.5 | $300 | $5,550.00 |
| | Kristina Stephenson-Cheang | 10.1 | $250 | $2,525.00 |
| | Amy Morse | 4.3 | $225 | $967.50 |
| | Mitchell Rosensweig | 5.6 | $225 | $1,260.00 |
| | Deepak Devabose | 10.9 | $175 | $1,907.50 |
| | Christopher Urner | 3.0 | $175 | $525.00 |
| | Joshua Fennell | 8.2 | $175 | $1,435.00 |
| | | | | |
| **Hackler, Daghighian, Martino & Novack ($6,920.00)[4]** | Sepehr Daghighian | 0.0 | $275 | $0.00 |
| | Larry Castruita | 1.2 | $225 | $270.00 |
| | Lauren Martin | 7.8 | $175 | $1,365.00 |
| | Asa Eaton | 30.2 | $175 | $5,285.00 |
| | Andrea Plata | 0.0 | N/A | $0.00 |
| | | | | |
| **TOTAL** | | | | **$26,010.00** |

### b. Reduction of Post-Rule 68 Fees

As Defendant points out, between its Rule 68 Amended Offer of Judgment served on November 8, 2018 (the "Amended Offer"), and the jury verdict rendered on February 14, 2019, Plaintiff incurred over $90,000 in fees. (Doc. 119 at 4, 15; Tudzin Decl. at ¶ 9.) The Court cannot conclude that fees incurred after the Amended Offer were fully reasonable. A fair reading of the Amended Offer is that Defendant agreed to pay $80,000 for restitution of the Subject Vehicle's value (the purchase price was $39,028.08, *see* Mikhov Decl. at ¶ 3 and Ex. C) and a single civil penalty under the Song-Beverly Act.[5] Defendant did not place much, if any, value on Plaintiff's common law fraudulent cause of action or claim for punitive damages: Defendant vigorously defended against them, and ultimately convinced the

---

[4] HDMN billing records also show .25 hour recorded by "Kevin Jacobson, Esq." (*See* Daghighian Decl., Ex. A. at 10.) Plaintiff's supporting declaration, however, provides no information about Mr. Jacobson's law school graduation date, bar admission, or length of practice. Without this, the Court is unable to determine a reasonable billing rate for Mr. Jacobson and will therefore deduct Mr. Jacobson's time from the lodestar calculation.

[5] That the Amended Offer was nearly double than the initial Rule 68 offer of $45,000 served in February 2018 underscores the value that Plaintiff's attorneys added during that period in establishing the worth of Plaintiff's claims.

Court at trial to grant judgment in its favor on those claims. (*See* Docs. 27, 29, 71, 103.) The Amended Offer thus did not include any compensation for Plaintiff's common law fraudulent concealment and punitive damage claims (for which there is no statutory basis to recover attorney's fees or costs).

Plaintiff rejected the Amended Offer made in November 2018 and proceeded to trial in February 2019 in order to obtain approximately $32,000 more in additional civil penalty damages under the Song-Beverly Act.[6] The jury verdict, however, was only marginally better than the $80,000 Amended Offer: the jury awarded $37,233 in restitution damages and $47,433 in civil penalty, for a total amount of $84,666. (Doc. 110.)

The lack of value added is a factor for the Court to consider in evaluating the reasonableness of the fee request. *Nightingale*, 31 Cal. App. 4th at 104. *See Cieslikowski v. FCA US LLC et al.,* Case No. 5:17-cv-00562-MRW, "ORDER RE: COSTS AND ATTORNEY'S FEES," at pp. 4–5 (Doc. 177) (C.D. Cal. Mar. 26, 2019) (Wilner, M.J.) (declining to award attorney's fees after Rule 68 offer for full value of the plaintiff's Song-Beverly Act claims where the legal work did not "reasonably advance" those claims at trial); *Jordan v. FCA US LLC et al.*, Case No. 2:17-cv-02435-MRW, "ORDER RE: COSTS AND ATTORNEY'S FEES," at pp. 6–7 (Doc. 130) (C.D. Cal. Nov. 30, 2018) (awarding 50% of fees expended after Rule 68 offer where the plaintiffs had a "colorable chance of augmenting their recovery with civil penalties" at trial that were not part of the settlement proposal). *Cf. Karapetian v. Kia Motors America, Inc.*, 539 F. App'x 814, 816 (9th Cir. 2013) (district court abused discretion in limiting fee request to period before settlement offer when plaintiff later recovered "additional" incidental damages [] above and beyond" that amount).

The Court finds that *some* of the legal work performed after the Amended Offer—including taking the case to trial—"reasonably advanced" Plaintiff's Song-Beverly Act claims. During that period, Plaintiff still possessed a "colorable chance of augmenting [her] recovery" with an additional civil penalty under the Song-Beverly Act. At trial, she did so—albeit in the amount of $4,666. Accordingly, the Court

---

[6] At the time the case was given to the jury, the maximum potential recovery on Plaintiff's remaining Song-Beverly Act claims was approximately $112,000. *See* Cal. Civ. Code §§ 1793.2(d), 1794(c).

exercises its discretion in awarding Plaintiff 30% of the fees expended after the Amended Offer served on November 8, 2018.

With the time and rate adjustments set forth above, the lodestar for the time expended after November 8, 2018, the date of the Rule 68 Amended Offer of Judgment, is $37,180.00. The Court therefore awards 30% of that amount—**$11,154.00**—as recoverable by Plaintiff:[7]

| LAW FIRM | LEGAL PROFESSSIONAL | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| **Knight Law Group ($885.00)** | Steve Mikhov | 2.8 | $300 | $840.00 |
| | Mitchell Rosensweig | 0.2 | $225 | $45.00 |
| | | | | |
| **Hackler, Daghighian, Martino & Novack ($36,295.00)** | Sepehr Daghighian | 57.0 | $275 | $15,675.00 |
| | Larry Castruita | 79.2 | $225 | $17,820.00 |
| | Lauren Martin | 13.2 | $175 | $2,310.00 |
| | Erik Schmitt | 2.8 | $175 | $490.00 |
| | | | | |
| **SUBTOTAL** | | | | **$37,180.00** |
| | | | | |
| **TOTAL (30%)** | | | | **$11,154.00** |

### c. Total Lodestar

Applying the calculations above, the total lodestar in this action is **$37,164.00.**

### 5. No Fee Multiplier

Once a court has calculated the lodestar, "it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Laffitte,* 1 Cal. 5th at 504 (citation omitted); *see also Ketchum*, 24 Cal.4th at 1132 (indicating the court may adjust the fee award considering "the following factors: (1) the novelty and difficulty of

---

[7] While this Court does not, and should not, limit Plaintiff's attorney's fees to a proportion of her ***actual*** recovery, *see Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 164 (2006), a comparison of the fees awarded to Plaintiff's ***potential*** recovery above the settlement amount serves as further indication of the reasonableness of the fee award. As noted above, Plaintiff's potential recovery on her Song-Beverly Act claims at trial was approximately $32,000 more than Defendant's Amended Offer of $80,000. The attorney's fees awarded here are roughly 34.8% of that additional potential recovery, well within the typical range of agreed-upon percentages in contingency fee arrangements. *See In re M.D.C. Holdings Sec. Litig.*, No. CV89-0090 E (M), 1990 WL 454747, at *7 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery.") (collecting cases).

the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award").

This case did not present novel or difficult questions of law or fact. Indeed, the issues raised in this case, particularly those related to the TIPM, have been addressed in multiple cases in this Court and other courts within the Ninth Circuit. *See, e.g.*, *Jordan*, Case No. 2:17-cv-02435-MRW (C.D. Cal. Mar. 29, 2017) (Wilner, M.J.); *Cieslikowski*, Case No. 5:17-cv-00562-MRW (C.D. Cal. Mar. 23, 2017) (Wilner, MJ); *Garcia*, Case No. 1:16–cv–0730–JLT (C.D. Cal. May 25, 2016); *Hall*, Case No. 1:16–cv–0684–JLT (E.D. Cal. May 13, 2016). Thus, the issues presented in this action were not complex. *See Steel v. GMC,* 912 F. Supp. 724, 746 (D.N.J. 1995) ("the issues in lemon law litigation are not complex and do not require a significant amount of legal analysis or novel pleading"). Further, as Defendant points out, the facts were not significantly disputed, and little discovery was required. Plaintiff's complaint and trial documents are nearly identical to those filed by Knight Law Group and HDMN in other actions. *Compare, e.g.*, Docs. 1-1, 30–32, 79 *with Hall*, Case No. 1:16–cv–0684–JLT, Docs. 1-1, 46–48; and *with Cieslikowski*, Case No. 5:17-cv-00562-MRW, Docs. 1-1, 74, 75 89. In sum, it does not appear that significant skill was needed to pursue Plaintiff's claims. Furthermore, there is no evidence that "the nature of the litigation precluded other employment by the attorneys." To the contrary, Plaintiff's fifteen attorneys expended an average of only 24 hours of work on this action over the course of less than two years.

Moreover, while Plaintiff's counsel faced some delay in receiving payment for work performed, to some extent that delay was of their own making. As set forth above, the ultimate recovery for the Plaintiff was only marginally better than Defendant's Amended Offer—hardly the "exceptional" outcome Plaintiff contends in her papers (*see* Doc. 118-1 at 6, 12, 21). Plaintiff and her lawyers could have accepted that offer and been paid well before the trial date. Defendant should not have to absorb the risk and cost of Plaintiff's litigation decision to proceed to trial to in order to potentially recover only approximately $32,000 more in damages. *See Graham*, 34 Cal. 4th at 582. Finally, the Court finds the contingent nature of the fee award is outweighed by the other factors, particularly in this action where the disputed facts and issues to be resolved were minimal. *See Bratton v. FCA US LLC,* No. 17-cv-

01458-JCS, 2018 WL 5270581, at \*7 (N.D. Cal. Oct. 22, 2018) (declining to augment the fees of counsel with a multiplier); *Hall*, 2018 WL 2298431, at \*8 (same).

Accordingly, the Court finds the lodestar amount of **$37,164.00** is reasonable and declines to award the 1.5 multiplier requested by Plaintiff.

### B.    Plaintiff's Request for Costs

Plaintiff requests costs in the amount of $21,726.72.  (Doc. 118-1 at 7, 14; Mikhov Decl. ¶ 2 and Ex. B.)  In general, an award of costs in federal district court is governed by Federal Rule of Civil Procedure 54(d) and not applicable state law, even in diversity cases.[8]  *See Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003) (citing *In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1120 n. 2 (9th Cir. 1987)).  This is because "federal courts sitting in diversity apply state substantive law and federal procedural law."  *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)).  The award of costs is a procedural matter.  *See, e.g., Andresen*, 2015 WL 3648972, at \*3; *Kolb v. Turner*, No. 1:07–cv–0262 OWW DLB, 2008 WL 5478575, at \*13 (E.D. Cal. Dec. 31, 2008) ("Costs, as a general matter, are procedural in nature such that an award of costs is governed by federal, not state, law.")  Thus, federal procedural law governs a request for an award of costs in this case.

Rule 54 of the Federal Rules of Civil Procedure provides that costs "should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).  This "creates a presumption in favor of awarding costs to

---

[8] An exception exists where "a state law provision allows for the awarding of costs as part of a substantive, compensatory damages scheme."  *Kelly v. Echols*, No. CIV-05118-AWI-SMS, 2005 WL 2105309, at \*16 (E.D. Cal. Aug. 30, 2005) (citing *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1064–65 (9th Cir. 2003).  That is, where a statutory provision expressly defines "damages" as including "costs," state law applies to an award of costs because "the measure of damages is a matter of state substantive law."  *Andresen v. Int'l Paper Co.*, No. 2:13–cv–02079–CAS(AJWx), 2015 WL 3648972, at \*3 (C.D. Cal. June 10, 2015) (citing *Clausen*, 339 F.3d at 1065).  *See also Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d 1014, 1026–27 (N.D. Cal. 2010).

Here, the Song-Beverly Act does not make costs an element of damages as in *Clausen*, *see* Cal. Civ. Code §§ 1793.2(d), 1794(b), (c).  Instead, the language of its costs provision, Civil Code section 1794(d) ("[i]f the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs. . . determined by the court to have been reasonably incurred by the buyer") is substantially similar to the language of Rule 54(d)(1) ("costs . . . should be allowed to the prevailing party").  Plaintiff cites no federal case applying section 1794(d) to costs instead of Rule 54(d), and the Court sees no reason to depart from the general rule that federal law governs whether costs should be awarded.  *Cf. Robinson v. Kia Motors Am., Inc.*, No. 2:10-CV-03187-SOM, 2016 WL 4474505, at \*1 (E.D. Cal. Aug. 25, 2016) (applying Rule 54(d) to analyze costs under the Song-Beverly Act); *Hall*, 2018 WL 2298431, at \*8 (same).

the prevailing party, but the district court may refuse to award costs within its discretion." *Champion Produce*, 342 F.3d at 1022. "[A] district court need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003). For example, costs may be declined in light of "a losing party's limited financial resources" or where there has been "misconduct by the prevailing party." *Champion Produce*, 342 F.3d at 1022.

The Supreme Court has explained that 28 U.S.C. § 1920 "defines the term 'costs' as used in Rule 54(d)." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987). Costs that may be taxed under 28 U.S.C. § 1920 include:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

*See also* Rule 292(f) of the Local Rules of the United States District Court, Eastern District of California (enumerating taxable cost items under federal law). Generally, the court may not award costs under Rule 54(d) that are not authorized by statute or court rule. *Arlington Cent. School Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 301 (2006). ). The costs that are taxable under section 1920 "are limited to relatively minor, incidental expenses," including "clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012). Thus, "costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit." *Id.* (citing 10 Wright & Miller § 2666, at 203).

### 1. Filing and Service Fees

Pursuant to Local Rule 292(f)(1) and (2), a party may recover "Clerk's fees" and "fees for service by a person other than the [United States] Marshal under Fed. R. Civ. P. 4 to the extent they do not exceed the amount allowable for the same service by the Marshal." (citing 28 U.S.C. § 1920(1)). *See also Direct*

*Connect Logistix, Inc. v. Road Kings Trucking Inc*., Case No. 1:16-cv-01006-AWI-SKO, 2016 WL 6608924, at *10 (E.D. Cal. Nov. 9, 2016) ("The costs associated with filing this action and serving [the defendants] are properly recoverable by [the plaintiff]."); *Family Tree Farms, LLC v. Alfa Quality Produce, Inc*., No. 1:08–cv–00481–AWI–SMS, 2009 WL 565568, at *10 (E.D. Cal. Mar. 5, 2009) ("Marshal's fees and fees for service by a person other than the Marshall under Rule 4 [of the Federal Rules of Civil Procedure] may be recovered; private process servers' fees are properly taxed as costs."). Currently, the United States Marshal charges $8 per mailed item and $65 per hour for personal service. 20 C.F.R. § 0.114(a). Requests for costs that exceed these amounts may be reduced to align with the amount authorized by section 0.114(a). *See Yeager v. Bowlin,* No. CIV. 2:08-102 WBS JFM, 2010 WL 716389 at *2 (E.D. Cal. Feb. 26, 2010).

Plaintiff requests costs in the amount of (1) $443.10 associated with filing the complaint ($439.50) and proof of service of the summons ($3.60), (2) $39.95 for service of the complaint, and (3) personal service of seven (7) deposition subpoenas in the amount of $65.50 each. (Mikhov Decl. Ex. B at 29, 33–51.) The $439.50 cost for filing the complaint is properly recoverable by Plaintiff; the $3.60 cost for the proof of service is not, and will be deducted. In addition, the $39.95 fee for service of the complaint is within the amount authorized under section 0.114(a) and will be allowed. With respect to the deposition subpoenas, however, there is no evidence regarding the amount of time required for service of the subpoenas. Accordingly, the Court reduces the service fee for each subpoena by $0.50 to the $65.00 contemplated by statute, for a total of $934.45 in costs for these activities.

All other costs requested for filing and service of documents, such as $95.84 for an overnight courier and $31.21 for messenger services (*see* Mikhov Decl. Ex. B at 30–31, 63–70), are not authorized under the section 1920. *Nat'l Union Fire Ins. Co. of Pitt. v. Allied Prop. & Cas. Ins. Co*., No. 2:12–cv–01380–MCE–KJN, 2014 WL 3529980, at *1 (E.D. Cal. July 16, 2014) ("Communication charges like courier [and] mail . . . costs cannot be taxed" under section 1920.") (citing *El–Fadl v. Central Bank of Jordan*, 163 F.R.D. 389, 390 (D.D.C.1995); *see also Cooper v. United Air Lines, Inc.,* Case No. 13–cv–02870–JSC, 2015 WL 3548572, at *3(N.D. Cal. June 5, 2015) ("Overnight delivery and courier charges are not one of the enumerated categories of recoverable costs in § 1920"); *Bonilla v. KDH Backhoe Serv.*,

No. C-05-3259 EMC, 2007 WL 39307, at \*3 (N.D. Cal. Jan. 4, 2007) (finding "overnight delivery and messenger services" "fall outside of the[] parameters" of section 1920). Accordingly, Plaintiff's requests for these costs are denied.

### 2. Copies and Transcripts

Section 1920(4) authorizes recovery of the costs of "making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920. Plaintiff has provided sufficient documentation demonstrating that it incurred a $343.72 fee for copies of exhibits to be used at trial. (See Mikhov Decl. Ex. B at 30, 85.) This cost for exhibit copies is properly recoverable by Plaintiff.

Under section 1920(2), "fees for printed or electronically recorded transcripts necessarily obtained for use in the case" may be taxed as costs. Similarly, Local Rule 292(f)(3) provides that items taxable as costs include "Court reporter's fees." Thus, if found to be necessary to the litigation of a case, the costs of transcripts of trial testimony and depositions taken in a case may be taxed as costs under Rule 54 and section 1920. *See Aflex Corp. v. Underwriters Laboratories, Inc.*, 914 F.2d 175, 176-78 (9th Cir. 1990) (finding the "taxing of costs for copies of depositions" was proper).

On the other hand, costs incurred related to transcripts that are "merely for the convenience of counsel" are not permitted under section 1920. *Oyarzo v. Tuolumne Fire Dist.*, No. 1:11–cv–01271–SAB, 2014 WL 1757217, at \*7 (E.D. Cal. Apr. 30, 2014). As a result, costs for condensing the transcripts, litigation support packages, and other convenience items are not permitted. *See Daniel v. Ford Motor Co.*, Civ. No. 2:11–02890 WBS EFB, 2018 WL 1960653, at \*4 (E.D. Cal. Apr. 26, 2018) ("the court will not allow costs for rough drafts, expedited fees, CD litigation packages, . . . 'e-transcripts,' 'digital transcripts,' or 'condensed transcripts,' which appear to have been provided for the convenience of the attorneys").

Plaintiff seeks costs relating to the transcripts of nine (9) deponents: Wendy Baker, Veasna Arim, Bernardo Mendigoria, Antonio Favle, Jimmy Lumpkin, Barbara Luna, Sandy Self, Jeff Richards, and Tina Dietrich. (Mikhov Decl. Ex. B at 29–30.) Plaintiff has not, however, provided sufficient documentation demonstrating the transcription costs incurred with respect to deponents Baker, Arim, Mendigoria, Favle, and Lumpkin, and accordingly no costs will be allowed for those witnesses.

With respect to the transcription costs for the depositions of Luna, Self, Richards, and Dietrich, Plaintiff has shown entitlement to some costs, such as the costs for printing and electronically recording the transcripts, but has not demonstrated that costs for "exhibit linking," "condensed" transcripts, and "litigation support packages" (*see* Mikhov Decl. Ex. B at 62, 64, 67–68) were necessary for the case. Rather, they appear to have been for the convenience of counsel, and recovery is not permitted under section 1920. *See Oyarzo*, 2014 WL 1757217 at *7; *Daniel,* 2018 WL 1960653 at *4. Accordingly, the Court will award the following costs requested by Plaintiff for deposition transcripts: $978.10 for deponent Richards (*see* Mikhov Decl. Ex. B at 62); $966.20 for deponent Dietrich (*see id*. at 64); $488.80 for deponent Luna (*see id*. at 67); and $551.70 for deponent Self (*see id*. at 68).

Finally, while Plaintiff is entitled to the cost of obtaining a trial transcript, she has made no showing that *daily* trial transcripts were obtained as a matter of necessity, instead of convenience (*see* Mikhov Decl. Ex. B at 30, 87). *See U.S. Fid. & Guar. Co. v. Lee Investments LLC*, No. CV-F-99-5583 OWW/SMS, 2010 WL 3037500, at *5 (E.D. Cal. Aug. 2, 2010) ("As a general rule, daily trial transcript costs should not be awarded absent court approval prior to the trial . . . However, a District Court may overlook the lack of prior approval if the case is complex and the transcripts proved invaluable to both the counsel and the court.") (citations omitted). The Court therefore adjusts the requested "daily" trial transcript cost to $142.35 (39 pages at $3.65 per page), the cost of an "ordinary" transcript in this Court.[9]

In sum, Plaintiff shall be awarded a total of $3,127.15 in transcription costs. All other costs associated with Plaintiff's deposition and trial costs requests ("supplies for trial," attorney travel, ride shares, conference rooms, airport parking, gasoline, rental cars, meals, and lodging, *see* Mikhov Decl. Ex. B. at 29–31) are not permitted under section 1920, and will not be awarded. *See Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 985 (S.D. Cal. 2014) ("Ordinary attorney's travel costs for depositions, pre-trial conferences and trial, long-distance phone calls, Federal Express and local delivery service, office expenses, postage, and typing charges are not 'costs' as that term is used in 28 U.S.C. § 1920, but are in fact out-of-pocket expenses.").

---

[9] *See* "Maximum Transcript Rates," United States District Court, Eastern District of California website, found at http://www.caed.uscourts.gov/caednew/index.cfm/attorney-info/court-reporters-transcripts/transcript-rates/ (last accessed May 2, 2019).

### 3. Expert Witnesses

Plaintiff seek $10,693.36 in expert witness fees, which includes fees for preparation of expert reports, attending depositions, travel, and lodging. (Mikhov Decl. Ex. B. at 76–83.) Plaintiff asserts such costs are appropriate under state law, noting: "Under the Song-Beverly Act, a prevailing plaintiff is entitled to recover all of its costs and expenses." (Doc. 118-1 at 22, emphasis in original.) As set forth above, however, in this diversity case the Court must apply federal law to determine whether Plaintiff is entitled to recover expert fees as costs. *See Aceves v. Allstate Ins. Co.,* 68 F.3d 1160 (9th Cir. 1995) (determining the district court erred in applying California law because "reimbursement of witness fees is an issue of trial procedure" and in a diversity action, "federal law controls the procedure by which the district court oversaw the litigation.").

Under section 1920, only compensation for "court appointed experts" and witness fees are permitted. *See* 28 U.S.C. § 1920. None of Plaintiff's witnesses were appointed by the Court. As such, Plaintiff is not entitled to recover the expert fees under section 1920. On the other hand, 28 U.S.C. § 1821 provides that "[a] witness shall be paid an attendance fee of $40 per day for each day's attendance," including testimony at a deposition and/or at trial. *See id.* § 1821(b). The section also permits a "travel allowance" equal to the mileage allowance prescribed for federal employees for travel by the witness to the place of attendance *See id.* § 1821(c). Thus, a prevailing party may be awarded an attendance fee and travel allowance under section 1821 for each expert who gives such testimony. *See Ruff v. County of Kings*, 700 F. Supp. 2d 1245, 1247–48 (E.D. Cal. 2010).

Consequently, Plaintiff is entitled to $120 in attendance fees for the (1) October 3, 2018 deposition of Thomas Lepper (*see* Mikhov Decl. Ex. B at 79), (2) October 15, 2018 deposition of Mr. Richards (*see id*. at 82), and (3) February 12, 2019 trial testimony of Mr. Lepper (*see id*. at 83). Plaintiff shall also be awarded a $288.26 (497 miles at $0.58 per mile[10]) travel allowance for Mr. Lepper's deposition and trial testimony, *see id*. at 79, 83. All other costs associated with Plaintiff's request for expert witness fees

---

[10] *See* "Privately Owned Vehicle (POV) Mileage Reimbursement Rates," U.S. General Services Administration website, found at https://www.gsa.gov/travel/plan-book/transportation-airfare-rates-pov-rates/privately-owned-vehicle-pov-mileage-reimbursement-rates (last accessed on May 2, 2019) (setting mileage reimbursement rate for privately owned vehicles at $.058 per mile).

(report preparation, lodging, etc.) are not authorized by either 28 U.S.C. § 1821 or § 1920, and therefore will not be awarded.

**4.     Total Costs to be Awarded**

With the deductions and adjustments set forth above, Plaintiff is entitled to **$4,469.86** in costs under federal law, as provided under 28 U.S.C. §§ 1821 and 1920.  *See* Fed. R. Civ. P. 54(d).

### V.     CONCLUSION AND ORDER

Based upon the foregoing, the Court **ORDERS**:

1.     Plaintiff's motion for attorney's fees is **GRANTED** in the modified amount of **$37,164.00**; and

2.     Plaintiff's motion for costs is **GRANTED** in the modified amount of $**4,469.86**.

IT IS SO ORDERED.

Dated:   __**May 6, 2019**__                    _____/s/ *Sheila K. Oberto*_____
                                                          UNITED STATES MAGISTRATE JUDGE